IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D

October 5, 2007

Charles R. Fulbruge III
Clerk

No. 06-41571

MARION JACK HENRY AND JANET K. HENRY

Plaintiffs - Appellants

v.

MUTUAL OF OMAHA INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:

On behalf of their deceased son, the Plaintiffs-Appellants Marion Jack Henry and Janet K. Henry (the "Henrys") filed suit in Texas state court against Defendant-Appellee Mutual of Omaha Insurance Company ("MOIC"), the issuer of their son's health insurance coverage, alleging that MOIC's denial of coverage for intravenous immunoglobulin ("IVIG") replacement therapy caused their son, Bradley David Henry ("Brad"), to commit suicide. MOIC removed the case to district court, which granted MOIC's motion for summary judgment. We affirm.

## I. FACTS AND PROCEEDINGS

### A. Facts

Brad had purchased a health insurance policy from MOIC which covered the expense of services and supplies for the treatment of medically necessary injuries and sickness. Brad's insurance policy defined a medically necessary service or supply as one that: "(a) is appropriate and consistent with the diagnosis in accord with accepted standards of community practice; (b) is not experimental or investigative; (c) could not have been omitted without adversely affecting the insured person's condition or quality of medical care; and (d) is delivered at the lowest and most appropriate level of care and not primarily for the sake of convenience." MOIC rejected the medical necessity of Brad's prescribed IVIG treatment. Brad subsequently committed suicide.

The dispute between Brad and MOIC began in 2002, after Dr. Michael Bullen diagnosed Brad with hypogammaglobulinemia immunological deficiency and recommended Brad undergo monthly IVIG infusions for one year. A second opinion from Dr. Glenn Bugay confirmed Dr. Bullen's diagnosis and concurred in the prescribed IVIG treatment. Dr. Bullen administered Brad's first IVIG treatment on December 10, 2002. On that same date, Dr. Bullen's office phoned MOIC to verify that Brad's policy would cover IVIG treatment, which was expensive (from $10,000 to $16,000 per monthly session). MOIC's oral response was non-committal.

Dr. Bullen followed up his phone call with a formal letter to MOIC on December 26, 2002, in which he requested a "predetermination" that Brad's policy would cover one year of monthly IVIG infusions. Dr. Bullen's predetermination request included his professional opinion (along with fifteen pages of notes and other supporting documents) that the prescribed treatment was medically necessary.

A physician employed by MOIC reviewed the claim and determined that Brad might not need or benefit from the prescribed IVIG treatment. MOIC also consulted an independent immunologist for a second opinion. That doctor similarly recommended that MOIC deny Brad's claim for IVIG treatment. Armed with two proffered opinions that IVIG therapy was not medically necessary, MOIC notified Dr. Bullen that Brad's policy would not cover his IVIG treatments.

After this initial rejection, Dr. Bugay, at Dr. Bullen's urging, wrote to MOIC, reiterating his and Dr. Bullen's agreement that IVIG treatment was medically necessary for Brad. MOIC forwarded Brad's file to a second in-house physician — the third MOIC-affiliated doctor to review it — who concluded that there was no basis for changing the initial recommendations. By a letter dated March 8, 2003, MOIC notified Dr. Bullen and Brad that it stood by its original determination of no coverage. MOIC also informed Dr. Bullen and Brad of their right to request review of its decision by an independent organization and provided the forms to be used in requesting such a review. Dr. Bullen and Brad never requested an independent review.

Despite MOIC's two official rejections of the claim, Dr. Bullen continued to administer monthly IVIG treatments to Brad and to request reimbursement from MOIC; and MOIC paid Dr. Bullen's invoices for Brad's December, January, February, and March treatments. In a letter dated April 2, 2003, however, MOIC notified Dr. Bullen and Brad that the benefits for previous treatments had been paid in error "[d]ue to the confusion of our previous handling," but that charges for IVIG treatments after April 1, 2003 "will be handled per policy provisions regarding medical necessity, based on the information currently in file," viz., denied unless new information surfaced regarding the medical necessity of Brad's claim. MOIC again reminded Dr. Bullen and Brad of their

right to seek a review by an independent organization and invited them to submit any additional relevant documentation.

Brad then consulted Dr. Howard Rosenblatt of the Allergy and Immunology Clinic at Houston's Texas Children Hospital. Dr. Rosenblatt performed a thorough history and physical examination and ordered numerous laboratory tests. Unlike Drs. Bugay and Bullen, Dr. Rosenblatt did not unequivocally conclude that the IVIG treatment was medically necessary, but did report that "it would be expected that [Brad] would derive clinical benefit from IVIG replacement therapy." Dr. Rosenblatt also recommended that Brad's dosing schedule be modified to increase the amount of monthly dosage of IVIG or to increase the frequency with which the current dosage was administered from every month to every two to three weeks. Thus Dr. Rosenblatt did recommend IVIG therapy for Brad, becoming the third doctor to do so.

On May 1, 2003, Brad received his fifth IVIG treatment. One week later, Brad forwarded Dr. Rosenblatt's report to MOIC with an accompanying note stating that he intended to continue his IVIG therapy "as this is my only alternative for a reasonably functional life, to maintain a job and have some hope of not being chronically ill." MOIC sent Dr. Rosenblatt's report to yet another independent physician for a review of the claim. Before this review was completed, Brad contacted MOIC for an update on the status of his claim. MOIC informed him that an independent physician — the fourth doctor assigned to the case by MOIC — was in the process of reviewing the new information from Dr. Rosenblatt and that this latest review would take a couple of weeks to complete. Brad threatened legal action if MOIC continued to reject his claim, but four days later (and five days before his wedding was to take place) Brad committed suicide.

On June 2, 2003, MOIC's second independent physician reviewer concurred in the recommendation of MOIC's three previously contracted doctors.

After learning that Brad had committed suicide, MOIC paid for Brad's fifth and final IVIG treatment.

## B. Prior Proceedings

The Henrys filed suit in Texas state court against MOIC and an insurance agent, alleging breach of contract and breach of the duty of good faith and fair dealing under the common law, Article 21.21 of the Texas Insurance Code,[1] and the Texas Deceptive Trade Practices Act ("DTPA").[2] These claims were brought pursuant to the Texas Survival Statute, which allows an executor to pursue causes of action on behalf of a decedent's estate.[3] Brad's estate sought damages for his physical pain and mental anguish before his death, funeral and burial expenses, and punitive damages. The Henrys also filed a wrongful death action, seeking damages for their own pecuniary loss, mental anguish, loss of companionship and society, and punitive damages.

MOIC succeeded in having the case removed to federal court on the basis of diversity jurisdiction after claiming fraudulent joinder of the non-diverse insurance agent. It then filed a motion for summary judgment, which the district court granted, based on the recommendation of a magistrate judge. In this appeal, the Henrys do not question the district court's grant of summary judgment dismissing their breach of contract claim, but do contest the ruling on their extra-contractual claims of failure to act in good faith and deal fairly, as well as on their wrongful death claim.

---

[1] The Insurance Code prohibits bad faith claim denial. Under Article 21.21, prohibited conduct includes "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Texas Ins. Code. Ann. art. 21.21 § 4(10)(a)(ii).

[2] A duty of good faith and fair dealing exists under Section 17.46 of the DTPA, which prohibits "[f]alse, misleading or deception acts of practices in the conduct of any trade or commerce," including acts which violate Article 21.21 of the Insurance Code. Tex. Bus. & Com. Code § 17.46.

[3] Tex. Civ. Prac. & Rem. Code § 71.021.

## II. ANALYSIS

This case presents two key issues: (1) whether there are genuine issues of material fact concerning MOIC's breach of the duty of good faith and fair dealing;[4] and (2) whether any of the Henrys' causes of action survive Brad's death. As we determine that the Henrys' claims conclusively fail on the merits, it is not necessary for us to reach the question whether their claims survive Brad's death.

### A. Standard of Review

The district court's decision to grant summary judgment is reviewed de novo.[5] A motion for summary judgment should be granted only when there is no genuine issue of material fact.[6] In determining whether there is a genuine issue of material fact, the reviewing court views all facts and draw all inferences therefrom in the light most favorable to the non-moving party.[7]

### B. Bad Faith Claims

The Henrys have advanced three discrete claims grounded in breach of the duty of good faith and fair dealing. Two of these claims are statutory, arising respectively under the DTPA and the Insurance Code; the third claim is based on the common law. All of the claims that MOIC breached this duty fail because MOIC had a reasonable basis for its decision to deny coverage.

The reasonable-basis test applies to all three of the Henrys' bad faith causes of action against MOIC. Under the common law, an insurer breaches the

---

[4] Both parties extensively briefed the question whether MOIC's coverage denial was the cause of the Henrys' damages, viz., Brad's suicide. As we affirm the district court's determination that MOIC did not breach its duty of good faith and fair dealing, we need not reach the issue of causation.

[5] American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

[6] Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[7] Id.

duty of good faith and fair dealing if it "has no reasonable basis for denying or delaying payment of a claim."[8] Similarly, causes of action against insurers for bad faith under the DTPA and the Insurance Code "require the same predicate for recovery"[9] as common law claims: "Plainly put, an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage."[10] Whether based on statute or the common law, MOIC's conduct for all of the Henrys' bad faith claims is judged on the reasonable-basis standard. Only if MOIC did not have any reasonable basis for denying Brad's prescribed IVIG treatment on the asserted ground of no medical necessity could MOIC have breached its duty of good faith and fair dealing to Brad.

The evidence confirms that MOIC did have a reasonable basis for its decision to deny coverage for Brad's IVIG treatment. MOIC urges that its reliance on the proffered opinions of several board-certified doctors who reviewed Brad's claim, including independent specialists, demonstrates good faith. The Henrys, on the other hand, insist that the reports prepared by MOIC's in-house and independent physicians were not objective, because these physicians were paid by MOIC, thereby making MOIC's reliance on them unreasonable. The Henrys might justifiably question the objectivity of MOIC's in-house doctors and even its "independent" physicians. There was, however, at least a bona-fide dispute as to the medical necessity of Brad's treatment, and the process that MOIC employed to resolve this dispute was sufficiently thorough and objective to satisfy the reasonable-basis standard. MOIC's doctors were not patently off-base in their analysis and conclusions regarding the IVIG treatment

---

[8] Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997).

[9] Id. at 460.

[10] Id.

prescribed by Brad's doctors. The professional justifications underlying the proffered recommendations relied on by MOIC certainly were not illegitimate or specious. Indeed, Dr. Rosenblatt, the independent specialist with whom Brad consulted for a third opinion, did recommend IVIG treatment for Brad, but his diagnosis was not unequivocal. The physicians whose opinions MOIC relied on reviewed Brad's claim multiple times, and MOIC repeatedly explained to Brad and his doctors that he could have his claim reviewed cost-free by an independent organization. The question is not whether in the end MOIC's doctors were right or wrong in their diagnosis of Brad's condition and medical needs; the question is whether their methods and conclusions were reasonable, and whether MOIC was reasonable in relying on these conclusions. We are satisfied that MOIC did not breach its duty of good faith and fair dealing, because it clearly had a reasonable basis on which to deny coverage of Brad's IVIG treatment for lack of medical necessity.[11]

MOIC supports its good faith argument by pointing out that it ultimately paid for all five of Brad's IVIG treatments. The Henrys counter by noting that MOIC denied Brad's claim from the beginning and should get no good faith credit for their administrative error or exceptions in paying for Brad's treatments. This quibble is irrelevant. The question of good faith turns on the reasonable-basis standard, and there is no genuine question of fact whether

---

[11] The Henrys also contend that MOIC could not have had a reasonable basis to deny coverage for Brad's IVIG treatment, because MOIC knew (but failed to inform Brad or his treating physicians) that a proper evaluation of his claim required additional information about his medical background and physical condition. Although the record does indicate that Brad's immune function "workup" was incomplete in some respects when MOIC's consulting doctors reviewed his claim, no more information about Brad was necessary for them to reach their diagnoses. This is because they did have copies of test results showing only a slight or minimal deficiency in Brad's immunoglobulin level, and these results alone formed an independent basis for the doctors' unanimous conclusion that IVIG treatment was not medically necessary for Brad. That Brad's file was less than complete and that MOIC was aware thereof does not show that MOIC did not have a reasonable basis to deny Brad's claim.

MOIC had a reasonable basis to reject Brad's claim as medically unnecessary. MOIC cannot be found in bad faith unless it knew (or should have known) that it had no reasonable basis for its decisions and rejected Brad's claim for coverage anyway.

## C. Wrongful Death

The Texas Wrongful Death Statute states that a "person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."[12] Parents of a deceased individual are generally entitled to bring a wrongful death action under this statute. In the instant case, however, the Henrys cannot maintain a cause of action against MOIC under the Texas Wrongful Death Statute because MOIC's denial of benefits to Brad was not "wrongful." As discussed above, and as held by the district court, even if, arguendo, MOIC's denial of IVIG treatment for Brad was the cause of his death, MOIC bears no liability because it had a reasonable basis to deny coverage of his IVIG treatment as not medically necessary. The Henrys cannot employ the Wrongful Death Statute for a claim against MOIC in which they cannot prove that MOIC denied their son's coverage in bad faith, viz., wrongfully.

## III. CONCLUSION

The district court's grant of summary judgment was proper. MOIC proved that, as a matter of law, it did not breach the duty of good faith and fair dealing in denying Brad's claim for medical benefits. The objectivity of an insurer's in-house and independent physicians may always be somewhat questionable, but here there does appear to have been a bona-fide dispute between well-credentialed medical professionals over the medical necessity of Brad's IVIG

---

[12] Tex. Civ. Prac. & Rem. Code § 71.002.

treatment. In addition, MOIC employed a thorough, multi-layered process to resolve this dispute, including notification to Brad and his doctors about yet another layer of appeal, which they did not bother to explore. As MOIC had a "reasonable basis" for denying coverage of Brad's IVIG treatment for lack of medical necessity, the summary judgment of the district dismissing the Henrys' actions is

AFFIRMED.