**RLI INSURANCE CO., Plaintiff,**

v.

**Marie COSTELLO, Defendant.**

**CIVIL ACTION NO. 4:16–0940**

United States District Court,
S.D. Texas, Houston Division.

Signed January 31, 2017

Michael D. Feiler, Gregory Keith Winslett, Quilling, Selander, Lownds, Winslett & Moser, PC, Dallas, TX, for Plaintiff.

Brad Thomas Wyly, Wyly & Cook, L.L.P, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

NANCY F. ATLAS, SENIOR UNITED STATES DISTRICT JUDGE

This insurance coverage case is before the Court on Plaintiff RLI Insurance Co.'s ("RLI" or "Plaintiff") Motion for Summary Judgment [Doc. # 12] ("Motion"). RLI filed suit seeking a declaratory judgment that it owes Defendant Marie Costello ("Costello") no further sums in connection with her claim under a recreational vehicle insurance policy RLI issued her. Costello filed a Response, in which she asserted several counterclaims [Doc. # 13]. RLI replied [Doc. # 14], and now moves for summary judgment on its claim. The Motion is ripe for determination. Having carefully considered the parties' briefing, all matters of record, and the applicable legal authorities, the Court **grants** RLI's Motion.

## I. BACKGROUND

### A. Factual Background

In the summer of 2015, Louis Costello, Costello's father, embarked on an extended interstate trip in Costello's 2008 Damon Tuscany recreational vehicle (the "RV").[1] During the trip, thieves broke into the RV on October 30, 2015, while it was parked outside the L'Auberge Casino on Lake Charles, Louisiana.[2] The thieves stole personal property valued in excess of $10,000,[3] and inflicted extensive damage to the exterior and interior of the vehicle by, among other things, breaking windows, prying open locks, and slitting the RV's seats, dashboard, and ceiling.[4]

---

1. Costello Original Answer & Counterclaims [Doc. # 7], at ¶ 34, at ECF 7.

2. Deposition of Louis Costello, dated July 19, 2016, at Costello Appendix Part I, Exh. A to Costello Response to RLI Motion ("Costello Response") ("Louis Costello Deposition—Defense") [Doc. # 13–1], at 20 lines 8–16

3. Costello valued the stolen items at $10,251. *See* DTPA Demand Notice, dated February 19, 2016, Exh. F to Costello Response [Doc. # 13–1], at ECF 38.

4. Louis Costello Deposition—Defense [Doc. # 13–1], at 42–43.

Approximately four days later, on or about November 3, 2015, Costello submitted a claim for vandalism and proof of loss pertaining to the theft (the "Claim") under RSI-issued recreational vehicle policy RRV 0068787–02, effective September 9, 2015 through ·September 9, 2016 ("Policy").[5] The Policy provided various forms of coverage for the RV itself and, in an endorsement, coverage for personal effects normally used in conjunction with the RV.[6] Costello subsequently authorized her father, Louis, to act as her agent for purposes of the Claim.[7] On approximately December 17, 2015, Louis Costello provided RLI with a copy of the RV's Texas Department of Motor Vehicles registration renewal receipt.[8] According to the receipt, the RV had been validly registered in Texas from October 1, 2014, to September 30, 2015, when the registration expired.[9] On the date of the loss—October 30, 2015—the RV was not validly registered.[10]

RLI, through its program administrator, RIS Risk Management Services, denied coverage for the Claim in its entirety on December 17, 2015.[11] RLI cited paragraph 25 in Part D of the Policy, which includes exclusions to coverage ("Exclusion 25"). Exclusion ·25 excludes losses to "[the RV] if [the RV] does not have a valid motor vehicle registration at the time of the loss."[12] In response, Costello, through counsel, sent RLI a demand letter dated February 19, 2016, accusing RLI of violating the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA") in various respects and presenting Costello's estimate of damages.[13] By letter dated April 7, 2016, RLI informed Costello that,

---

**5.** *See* Costello Response [Doc. # 13], at 4 ¶ 3; RLI Policy Declarations, at RLI's Appendix in Support of Motion for Summary Judgment ("RLI Appendix") Part I, Exh. A to RLI's Motion for Summary Judgment ("RLI Motion") [Doc. # 12–1], at ECF 2.

Louis Costello also called RLI to report the damage to the RV, though it is unclear from the record whether the call preceded Costello's November 3, 2015 claim. During that call, an RLI employee informed Louis Costello that the loss would be covered under the Policy. This representation occurred before any RLI adjuster viewed the RV. Louis Costello Deposition, at RLI Appendix Part IV, Exh. D to RLI Motion ("Louis Costello Deposition—Plaintiff") [Doc. # 12–4], at 63 lines 6–22.

**6.** RLI Policy Declarations [Doc. # 1–1], at ECF 3; RLI Policy, section D(A)–(B), at RLI Appendix Part I ("RLI Policy") [Doc. # 1–1], at 8, at ECF 15; Personal Effects Coverage Endorsement to RLI Policy, at RLI Appendix Part II, Exh. A to RLI Motion [Doc. # 1–1], at 1, at ECF 64.

**7.** *See* Marie Costello Deposition, at RLI Appendix Part III, Exh. C to RLI Motion ("Marie Costello Deposition") [Doc. # 12–3], at 14 lines 8–22, at ECF 19. Marie Costello is the named insured under policy RRV 0068787–

02, effective September 9, 2015 through September 9, 2016 ("Policy").

**8.** *See* Louis Costello Deposition—Plaintiff [Doc. # 12–4], at 51 lines 11–25, at ECF 11; Texas Department of Motor Vehicle Registration Renewal Receipt ("Registration Renewal Receipt"), dated October 1, 2014 [Doc. # 12–4], at ECF 21.

**9.** Registration Renewal Receipt, dated October 1, 2014 [Doc. # 12–4], at ECF 21.

**10.** In Texas, vehicle owners must renew their vehicle's registration each year, if the vehicle is to be used on a public highway. TEX. TRANSP. CODE ANN. § 502.040 (West 2013).

**11.** Coverage Denial Letter, dated December 17, 2015, Exh. E to Costello Appendix Part I to Costello Response ("December 17, 2015 Coverage Denial Letter") [Doc. # 13–1], at ECF 35–40.

**12.** RLI Policy, Amendment of Policy Provisions—Texas, Exclusion 25 [Doc. # 1–1], at 3, at ECF 40; *see infra* note 20.

**13.** *See* DTPA Demand Letter, dated February 19, 2016, Exh. 3 to RLI Original Complaint for Declaratory Relief ("DTPA Demand Letter") [Doc. # 1–3], at 2, at ECF 3.

pursuant to an applicable Policy Endorsement, RLI would cover $5,784.87, a portion of the Claim relating to the value of certain personal property stolen from the RV.[14] In the same letter, RLI reaffirmed its position that Exclusion 25 precludes coverage for damage from vandalism to the RV.[15] The same day, RLI filed its Complaint in this suit for declaratory relief.

RLI seeks a declaratory judgment that there is no coverage under the Policy for the vandalism damage to the RV because the vehicle lacked a valid motor vehicle registration at the time of the loss.[16] Costello, in turn, argues RLI's denial is a breach of contract and that Exclusion 25 does not bar coverage.[17] Costello also asserts state and common law extra-contractual claims against RLI, but urges the Court to refrain from ruling on these claims at this juncture.[18] RLI moves for summary judgment on its declaratory request.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Curtis*, 710 F.3d at 594.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Chambers v. Sears, Roebuck and Co.*, 428 Fed.Appx. 400, 407 (5th Cir. 2011). Likewise, "conclusory allegations" or "un-

---

**14.** Letter from Greg K. Winslett to Robert W. Von Dohlen, dated April 7, 2016, at Appendix Part IV, Exh. F to RLI Motion ("April 7, 2016 Coverage Letter") [Doc. # 12–4], at 4, at ECF 31.
   RLI provided Costello with a check in that amount, which sum RLI arrived at in light of certain limitations, exclusions, and conditions under the Policy. *See id*; Check dated March 30, 2016 [Doc. # 12–4], at ECF 42. Costello does not challenge RLI's ultimate decision on coverage for the personal property theft claim. Costello Response [Doc. # 13], at 2 n.2.

**15.** April 7, 2016 Coverage Letter [Doc. # 12–4], at 1, at ECF 28.

**16.** RLI Original Complaint for Declaratory Relief [Doc. # 1], at 7 ¶ 22(A).

**17.** Costello Original Answer and Counterclaims [Doc. # 7], at 8 ¶ 43; Costello Response [Doc. # 13], at 3.

**18.** Costello Response [Doc. # 13], at 3.

substantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

### A. General Standard for Interpretation of an Insurance Policy

The parties do not dispute that Texas law controls the interpretation of the Policy. Under Texas law, the meaning of an insurance contract is determined under the standards applicable to contracts generally. *See One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011); *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). A court's primary concern is to give effect to the intention of the parties as expressed by the policy language. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983)); *cf. Greene v. Farmers Insurance Exchange*, 446 S.W.3d 761, 766 (Tex. 2014). "It is well settled that insurance policies should be construed in favor of the insured; however, this rule does not apply when the term to be construed is unambiguous and susceptible of only one construction." *Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 338 (Tex.

App.–Houston [1st Dist.] 2005, pet. denied) (citing *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 571 (Tex. App.–Austin 2001, no pet.)). "In such a case, we give the words in the policy their plain meaning." *Id.*

The policy holder bears the burden to demonstrate coverage under the Policy, while the insurer bears the burden of establishing the applicability of any exclusions to coverage. *See Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Neither the Texas Supreme Court nor the Fifth Circuit has ruled definitively on the specific issue presented by this case. This Court therefore must make an "*Erie* guess" as to how the Texas Supreme Court would decide the issue. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000); *United States v. Johnson*, 160 F.3d 1061, 1063 (5th Cir. 1998).

### B. Policy Terms and Issues

As the party asserting a claim for breach of the Policy contract, Costello bears the burden to demonstrate that she performed her duties under the Policy. In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp.*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.)).

In pertinent part, the Policy contains the following language:

**PART D—COVERAGE FOR DAMAGE TO YOUR AUTO**

**Insuring Agreement**

A. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

B. "Collision" means the upset of "your covered auto" or its impact with another vehicle or object.

Loss caused by the following is ·considered other than "collision":

\* \* \* \*

7. Malicious mischief or vandalism.[19]

RLI relies on Exclusion 25 to coverage for its denial of payment of the claim for damage to Costello's RV, which provides, in pertinent part:

**Exclusions**

We will not pay for:

\* \* \* \*

25. Loss to "your covered auto" if "your covered auto" does not have a valid motor vehicle registration at the time of loss . . . .[20]

■ Neither party disputes the validity of the Policy or its meaning.[21] Nor do they contest that the Policy covered loss to the RV arising from "[m]alicious mischief or vandalism." Rather, the parties' dispute turns on whether, under Texas law as interpreted by the Texas Supreme Court, RLI may rely on Exclusion 25 to justify its denial under the circumstances of this case. Costello argues that Exclusion 25 does not bar coverage because (1) Section 862.054 of the Texas Insurance Code (commonly referred to as the Texas Anti–Technicality Act) ("§ 862.054") precludes application of Exclusion 25 under these circumstances; (2) RLI was not prejudiced in regard to the Claim by Costello's failure to timely renew the RV's registration, and (3) enforcing Exclusion 25 violates public policy.[22] The Court examines these arguments in turn.

**C. Texas Insurance Code § 862.054**

Section 862.054 of the Texas Insurance Code provides:

**Fire Insurance: Breach by Insured; Personal Property Coverage.**

Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy or contract of insurance on personal property, or of an application for the policy or contract:

(1) does not render the policy or contract void; and

---

**19.** RLI Policy, § D(B)(7) [Doc. # 1–1], at 8, at ECF 15.

**20.** RLI Policy, Amendment of Policy Provisions—Texas, Exclusion 25 [Doc. # 1–1], at 3, at ECF 40. In full, Exclusion 25 provides as follows:

> "[We will not pay for l]oss to "your covered auto" if "your covered auto" does not have a valid motor vehicle registration at the time of loss. This exclusion is intended to apply only to the covered auto scheduled on the policy. This exclusion does not apply to non-owned vehicles while being used as a temporary substitute."

*Id.*

**21.** Costello asserted in her Answer and Counterclaims that, because the Policy does not define "valid motor vehicle registration," the definition is an issue of law and fact to be decided at trial. *See* Costello Original Answer and Counterclaims [Doc. # 7], at 6 ¶ 26. Costello did not respond to RLI's briefing on the issue after RLI rejected the position, *see* RLI Motion [Doc. # 12] at 10–12, and the argument is deemed abandoned. S.D. Tex. L.R. 7.4.

**22.** Costello Response [Doc. # 13], at 3, 14.

(2) is not a defense to a suit for loss.

Tex. Ins. Code § 862.054.

RLI asserts that § 862.054 is inapplicable because no "breach" of the Exclusion is possible and because non-compliance with Exclusion 25's registration requirement could not bring about the loss at issue.[23] Costello responds that "violation" of Exclusion 25 could, under other circumstances, contribute to a loss of the type covered by the Policy.[24] The Court concludes that § 862.054 is inapposite because Costello did not "breach or violate" Exclusion 25 and because, if a breach or violation existed, it could not have caused the loss in issue.

*No "Breach."*—The Texas Supreme Court recently addressed whether an insured "breached" or "violated" a homeowner's insurance policy provision for purposes of § 862.054 in *Greene v. Farmers Insurance Exchange*, 446 S.W.3d 761 (Tex. 2014). The policyholder in *Greene* insured her home under a homeowner's insurance policy issued by Farmers Insurance Exchange ("Farmers"). In the summer of 2007, Greene moved from her home to a retirement community. *Greene*, 446 S.W.3d at 763. Four months later, a fire from a neighboring house spread to and damaged insured Greene's vacant home. Farmers denied coverage. *Id.*

The homeowner's policy provided property coverage for dwellings, but included a condition that:

"Vacancy." If the insured moves from the dwelling ... the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

*Id.*

Greene argued that § 862.054 precluded Farmers from raising the vacancy clause as a defense to coverage. The Supreme Court disagreed. Breach of a contract, the Court noted, "occurs when a party fails to perform an act that it has contractually promised to perform[,]" and "violation" of a contractual provision is "the contravention of a right or duty." *See id.* at 765 (internal citations omitted). The Court held that because the clause "d[id] not contain a promise by or obligation on behalf of [the insured] to occupy her house," the clause was neither "breached" nor "violated" when the house was left vacant for longer than sixty days. Section 862.054 was therefore no bar to Farmers' defense. *Id.* at 765, 767.

The Texas Supreme Court's reasoning in *Greene* controls the outcome of the case at bar. Section 862.054 applies when an insured breaches or violates a policy provision. Exclusion 25 states that RLI will not pay for loss to a covered vehicle if the vehicle lacks a valid registration at the time of loss. That Exclusion does not contain any promises by, duty of, or obligation of, the insured. The Exclusion limits the scope of coverage.[25] The RV's lack of a valid registration thus does not amount to Costello's "breach" or "violation" of Exclusion 25. *Cf. Greene*, 446 S.W.3d at 765; *id.* at 771 (Boyd, concurring) ("the [vacancy clause] does not impose a breachable obligation"). Thus, *Greene* teaches that RLI is not barred from denying coverage based on Exclusion 25. *Cf. Am. Risk Ins. Co. v. Serpikova*, No. 14-14-00859-CV, ——

---

23. *See* RLI Motion [Doc. # 12], at 12–14.

24. Costello Response [Doc. # 13], at 14.

25. Costello was not required by Exclusion 25—or any other Policy provision—to register her RV. The Policy language states simply that if the vehicle is not registered, RLI is not required to pay losses caused by vandalism. *See* RLI Policy, Amendment of Policy Provisions—Texas, Exclusion 25 [Doc. # 1-1], at 3, at ECF 40.

S.W.3d ——, ——, 2016 WL 7108240, at *6 (Tex. App.–Houston [14th Dist.] Dec. 6, 2016) (finding, with respect to a homeowner's policy definition that limits scope of coverage without containing promises of or obligations on the part of the insured, that "under the clear wording of [§ 862.054] and under *Greene,* [§ 862.054] does not apply ... and so cannot prohibit the Insurer from denying coverage under the Policy.")

■■■ *No Possible Contribution to Loss in Issue.*—Section 862.054 states that an insured's breach of a "warranty, condition, or provision" will not constitute a defense to an action for coverage under an insurance policy unless the breach caused or contributed to the destruction of the insured property. TEX. INS. CODE § 862.054; *see also Albany Ins. v. Anh Thi Kieu,* 927 F.2d 882, 892–93 (5th Cir. 1991) (discussing § 862.054 predecessor statute's application to breach of warranties). Section 862.054 does not reach insurance policy provisions that are themselves material but, if breached, "from [their] very nature could not contribute to the destruction of the insured property." *See Albany Ins.,* 927 F.2d at 892–93; *Citizens State Bank of Dickinson, Tex. v. Am. Fire & Cas. Co.,* 198 F.2d 57, 59 (5th Cir. 1952) (discussing § 862.054 predecessor statute); *Farmers Ins. Exchange v. Greene,* 376 S.W.3d 278, 283–84 (Tex. App.–Dallas 2012, pet. granted).

In *Albany Ins. Co. v. Anh Thi Kieu,* involving a ship's allision and resulting damage, the Fifth Circuit acknowledged the exception to the Anti–Technicality Act and suggested in *dicta* that the Act would apply if courts could hypothesize circumstances under which the breach could contribute to the loss. *See Albany Ins.,* 927 F.2d at 892–93. The Fifth Circuit clarified that "this exception to the anti-technicality provision is not relevant here. It is certainly possible that, under a different set of circumstances, the breach of an owner aboard warranty or a seaworthiness warranty might contribute to the destruction of the insured property." *Id.*

In a similar vein, this Court can conceive of no circumstances under which failure to have a valid motor vehicle registration for the RV could contribute to vandalism loss such as the one at issue here. Costello, without citing support, offers a hypothetical chain of events that she argues could causally link failure to maintain a valid motor vehicle registration and/or failure to pass a vehicle safety inspection to "an accident."[26] Costello's argument is unavailing. Her claim for indemnity arose as a result of damage to the RV caused by "malicious mischief or vandalism,"[27] not by a car accident. The Court concludes that, even if one assumes Exclusion 25 could be "breached or violated," Exclusion 25 is not subject to § 862.054 because failure to have a valid motor vehicle registration could not, by its nature, cause or contribute to the vandalism loss. *Cf. McPherson v. Camden Fire Ins. Co.,* 222 S.W. 211, 214 (Tex. Comm'n App. 1920, holding approved) (Anti–Technicality Act inapplicable because breach of "iron-safe" provision requiring books and records be kept in fireproof safe could not have contributed to the fire loss); *W.W. Rowland Trucking Co. v. Max Am. Ins. Co.,* 559 Fed.Appx. 253, 255, 258 (5th Cir. 2014) (deciding district court, which found breach of insurance policy's fencing warranty did not cause "theft loss," properly applied § 862.054).

---

**26.** *See* Costello Response [Doc. # 13], at 15. As an example of such an accident, Costello describes a scenario in which "an insured's brakes fail leading to a car accident." *See* Costello Response [Doc. # 13], at 15 n.5 and accompanying text.

**27.** *See* RLI Policy, § D(B)(7) [Doc. # 1–1], at 8, at ECF 15.

### D. Prejudice Requirement in *Hernandez* and its Progeny

■ Invoking a series of Texas Supreme Court decisions that incorporate a "material breach" analysis into the coverage context, Costello contends that RLI cannot deny coverage for the vandals' damage to the RV because the failure to comply with Exclusion 25 did not prejudice RLI. RLI, in turn, argues that no showing of prejudice is required. The Court concludes that the prejudice framework is inapplicable to the case at bar.

Costello relies on five Texas Supreme Court cases that required the insurer to prove it was prejudiced by its insured's breach of certain policy provisions before the insurer could deny coverage. Each of these cases involved the insured's failure to give notice of a claim or failure to obtain the insurer's consent before settling a dispute. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994); *PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 636–37 (Tex. 2008); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.,* 288 S.W.3d 374, 382–83 (Tex. 2009); *Fin. Indus. Corp. v. XL Specialty Ins. Co.,* 285 S.W.3d 877, 879 (Tex. 2009); *Lennar Corp. v. Markel Am. Ins. Co.,* 413 S.W.3d 750, 757 (Tex. 2013). These decisions are grounded in contract law and are based "on the principle that one party is excused from performing under a contract only if the other party commits a material breach" of that contract. *See Greene,* 446 S.W.3d at 767–68 (citing cases). In each of the five cases, the Court analyzed the materiality of the insured's breach in terms of prejudice the insurer suffered. *See Hernandez,* 875 S.W.2d at 694; *PAJ,* 243 S.W.3d at 631–33; *Prodigy Commc'ns Corp.,* 288 S.W.3d 374 at 382; *Fin. Indus. Corp.,* 285 S.W.3d 877 at 878–79; *Lennar,* 413 S.W.3d at 755–56. The Texas Supreme Court concluded in all these cases that the insureds' breaches were immaterial, either because the insurers received the benefits they expected from the contracts or because the policy terms at issue were not a part of the bargained-for exchanges between the insurers and insureds. *See Hernandez,* 875 S.W.2d at 694; *PAJ,* 243 S.W.3d at 631–33; *Prodigy Commc'ns Corp.,* 288 S.W.3d 374 at 382; *Fin. Indus. Corp.,* 285 S.W.3d 877 at 878–79; *Lennar,* 413 S.W.3d at 755–56; *see also Greene,* 446 S.W.3d at 768 (reviewing *Hernandez* and its progeny, and noting that "[i]f the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance.")

Costello argues that failure to renew the RV's registration did not prejudice RLI with respect to the loss, *i.e.,* the vandalism damage. While true, Costello's argument skips the predicate for the prejudice analysis, namely, that she, as the insured, breached a contractual duty imposed on her by the Policy. *See Greene,* 446 S.W.3d at 768. Here, there is no such breach.[28] Without the insured's breach of a contractual duty, the prejudice analysis in *Hernandez* and its progeny is not applicable. *See id.*[29] Moreover, the case at bar does not involve the insured's duty to give no-

---

**28.** *See supra* Section III.C.

**29.** Costello relies on *Greene*'s characterization of the vacancy clause as part of the scope of coverage, as opposed to an exclusion, to argue that the vacancy clause and Exclusion 25 are fundamentally different and warrant separate treatment with respect to the prejudice requirement. *See* Costello Response [Doc. # 13], at 11–14. In Costello's view, the vacancy clause expands coverage while Exclusion 25 restricts it. Therefore, she argues, Exclusion 25 is like the provisions in *Hernandez* and its progeny, and the Court should impose a prejudice requirement as a condition to the Exclusion's enforcement in this case. *Id.* at 14. Costello's argument again skips over the

tice of a claim or to obtain consent before settling a dispute.

### E. Public Policy

▇ Costello also contends that the public policy underlying the Anti–Technicality Act and the Texas Supreme Court's decision in *Puckett v. U.S. Fire Insurance Co.*, 678 S.W.2d 936 (Tex. 1984), preclude RLI's enforcement of Exclusion 25 in this case. The Court disagrees.

In *Puckett*, the insurer sought a declaration that it was not obligated to pay any damages or defend any claim arising out of the crash of a small aircraft caused by pilot error, citing a clause in the policy suspending coverage if the airplane's airworthiness certificate was not in effect. *Puckett*, 678 S.W.2d at 937. Federal regulations at the time required every aircraft meet numerous maintenance requirements, including annual inspections, in order to maintain the validity of the airworthiness certificate. *Id.* When the crash occurred, the necessary inspection had not been performed on the aircraft and its certificate accordingly had lapsed. *Id.* The parties stipulated that the failure to have the inspection did not contribute to the accident. *Id.*

Acknowledging the text of the policy did not require a causal connection between the breach and the accident, the Supreme Court nonetheless held that "an insurer cannot avoid liability under an aviation liability policy unless the failure to inspect is either the sole or one of several causes of the accident." *Id.* at 938. The Court construed the Anti–Technicality Act as an indication of a Texas public policy applicable to the case before it. *See id.* The Court concluded that under the circumstances, it would be against public policy to allow the insurer "to avoid liability by way of a breach that amounts to nothing more than a technicality." *See id.*

▇ *Puckett*, a decision involving an aviation policy and issued more than thirty years ago, does not control this case.[30] As set forth in a well-reasoned dissent, the *Puckett* majority's ruling burdens clear and unambiguous insurance policies "with uncertain terms that this court may from time to time determine should have been included in the parties' contract." *See Puckett*, 678 S.W.2d at 940 (Pope, C.J., dissenting). Moreover, Costello, like the insured in *Greene*, did not breach a duty

---

fundamental predicate: existence of a breach of a duty under the contract by the insured. The courts in the *Hernandez* line of cases implicitly decided the provisions at issue were breachable obligations. Costello's argument that this Court should do the same is unpersuasive. *See Greene*, 446 S.W.3d at 765; *supra* Section III.C.

**30.** The Fifth Circuit cited *Puckett* in passing in an unpublished, non-precedential decision reversing the grant of summary judgment on certain claims in an insurance coverage case regarding a claim for wind damage to an insured's roof. *See Santacruz v. Allstate Tex. Lloyd's, Inc.*, 590 Fed.Appx. 384, 387 (5th Cir. 2014) (*per curiam*) (unpublished). In *Santacruz*, the insured repaired his roof in anticipation of an impending storm before the insurer's adjuster could inspect the dam-

age, arguably in contravention of a policy provision requiring the insured to provide the insurer with access to the damaged property. *Id* at 386–87. Citing § 862.054 and *Puckett*, as subsidiary support, the Fifth Circuit noted that the magistrate judge had correctly concluded that § 862.054 would "allow a denial of coverage on that basis only if the breach of that provision contributed to the loss or made a loss determination unfeasible." *Id.* at 387. The Fifth Circuit noted the insured did not clearly violate the plain language of the access provision and concluded that the insurer did not, in any event, actually rely on that provision in denying coverage. *Id.* This citation to *Puckett* is not a probative endorsement of that case's ruling that public policy mandated insertion by a court of an unwritten condition into an insurance policy exclusion.

under the Policy. *See Greene*, 446 S.W.3d at 770 (rejecting insured's public policy argument and distinguishing *Puckett* because, among other things, insured did not breach the insurance policy). The public policy underlying the Anti–Technicality Act [31] does not preclude RLI from relying on Exclusion 25 in this motor vehicle vandalism case.

### F. Extra–Contractual Claims

▉ Costello asserts counterclaims for violations of various provisions of the Texas Insurance Code, Texas's common law requirement of good faith and fair dealing, and § 17.46(b) of the Deceptive Trade Practices Act ("DTPA").[32] "Texas courts have clearly ruled that extra-contractual tort claims [under the DTPA and the Texas Insurance Code] require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (citing *Emmert v. Progressive Cty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.–Tyler 1994, writ denied)); *see Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). "If there is no merit to the bad faith claim, there can be no liability on the statutory claims."

*Alhamzawi v. GEICO Cas. Co.*, 216 F.Supp.3d 764, 2016 WL 6277809, at *3 (N.D. Tex. Oct. 25, 2016) (citing *Higginbotham*, 103 F.3d at 460).

▉ RLI cannot be liable for bad faith because it had a reasonable basis to deny recovery. *See Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007) ("an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." (quoting *Higginbotham*, 103 F.3d at 460)). "In light of the Court's determination that the breach of contract claim fails as a matter of law, Plaintiff['s] common law or statutory bad faith claims survive the summary analysis only if Plaintiff[ ] raise[s] a genuine issue of material fact as to either of two exceptions . . . : (1) the insurer's failure to timely investigate the insured's claim; or (2) the insurer's commission of 'some act, so extreme, that would cause injury independent of the policy claim.'" *Hernandez v. Allstate Tex. Lloyds*, Civil Action No. 7:12-CV-480, 2014 WL 903130, at *7 (S.D. Tex. Feb. 7, 2014) (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)); *see also Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx.

---

31. To the extent Costello argues that public policy generally precludes enforcing Exclusion 25 to her Claim because the failure to renew the RV's registration did not cause or contribute to cause the loss, the Court is not persuaded. The Texas Supreme Court "has long recognized Texas' strong public policy in favor of preserving the freedom of contract." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). "Absent strong public policy reasons for holding otherwise . . . the preservation of contractual freedom and enforcement is no less applicable to the relationship between an insured and insurer." *Id.* at 665. Costello offers no such reasons separate from her invocations of *Puckett*, and the Court concludes none provides a basis to void the arm's-length contract into which the parties have entered. *Cf. id.* at 672–73 (Hecht, concurring) (" '[c]ourts must

exercise judicial restraint in deciding whether to hold arm's-length contracts void on public policy grounds' . . . [c]ourts are to derive public policy from existing law, not create it." (internal citations omitted)).

32. *See* Costello Original Answer & Counterclaims [Doc. # 7], at 8–11 (listing claims under Tex. Ins. Code §§ 541.051(1), 541.060(1), (2), (3), & (7), and 541.061; Tex. Ins. Code §§ 542.055, 542.056, 542.057, and 542.058; common law good faith and fair dealing; and § 17.46(b) of the DTPA, incorporated by Tex. Ins. Code § 541.151). Costello also requests attorney's fees and statutory interest for her entire claim for noncompliance with the Texas Prompt Payment Act under Tex. Ins. Code § 542.060. None of these statutes provide relief to Costello.

366, 369 (5th Cir. 2012).[33] Costello has failed to establish genuine issues with respect to either exception. The bad faith claims fall with the coverage claim, and Costello's claims under the Texas Insurance Code and the DTPA follow suit. Each must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Exclusion 25 is enforceable and that Plaintiff RLI Insurance Co. is permitted to rely on that provision to deny coverage under the Policy for the vandalism damage to the RV. The Court therefore concludes that RLI properly denied Defendant Marie Costello's vandalism claim, has fully complied with all of its obligations under the Policy with respect to the Claim, did not breach the Policy, and did not engage in any purported "bad faith" in connection with the Claim. RLI owes no further amounts to Defendant Costello in connection with the Claim. Further, these conclusions mandate dismissal of Defendant Costello's counterclaims. It is therefore

**ORDERED** that RLI's Motion for Summary Judgment [Doc. # 12] is **GRANTED.** It is further

**ORDERED** that Defendant Marie Costello's counterclaims are **DISMISSED with prejudice.**

Final judgment will be entered in favor of RLI.

---

**33.** The Court recognizes disagreement over whether the "extreme act" exception is settled law or *dicta. Compare Blum's Furniture Co. v. Certain Underwriters at Lloyds London,* 459 Fed.Appx. 366, 369 (5th Cir. 2012) ("[t]he only recognized exceptions ... are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." (quoting *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995))) *with Mid–Continent Cas. Co. v. Eland Energy, Inc.,* 709 F.3d 515, 521 (5th Cir. 2013) (stating the "extreme act" language in *Republic Ins.* is *dicta* ). This exception, *dicta* or otherwise, is inapplicable in this case.