# IN THE SUPREME COURT OF TEXAS

══════════════

No. 12-0867

══════════════

BOB GREENE, AS NEXT FRIEND OF LEWAYNE GREENE, PETITIONER,

v.

FARMERS INSURANCE EXCHANGE, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued January 7, 2014**

JUSTICE JOHNSON delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a concurring opinion, in which JUSTICE WILLETT joined.

In this case a house that had been vacant for several months was damaged when fire spread to it from a neighboring property. The house was insured under a Texas homeowner's policy containing a clause suspending dwelling coverage if the house was vacant for over sixty days. The homeowner had not purchased an available endorsement providing coverage for extended vacancies, and the insurer denied the homeowner's claim, even though the vacancy was not related to the loss. On cross-motions for summary judgment, the trial court granted judgment for the homeowner. The court of appeals held that the vacancy provision must be applied according to its terms and reversed.

We affirm.

# I. Background

LaWayne Greene owned and lived in a house in Irving that she insured with Farmers Insurance Exchange. The policy Farmers issued to Greene was a Texas Homeowners-A Policy (HO-A) form prescribed by the Texas Department of Insurance (TDI).[1] The policy was effective from February 10, 2007 to February 10, 2008. On June 30, 2007, Greene moved into a retirement community. On July 5, 2007, she notified Farmers that she was going to sell her house and provided Farmers with change of address information. On November 14, 2007, fire from a neighboring house spread to Greene's house and damaged it. Farmers denied Greene's fire damage claim on the basis that the house had been vacant for more than sixty days. The denial prompted a lawsuit on Greene's behalf by Bob Greene as her next friend (collectively, Greene). Greene sued Farmers for breaching its contractual obligation to pay under the policy, as well as for extra-contractual damages.[2]

Section I.A. of Farmers' policy contains the relevant property coverage[3] language:

SECTION I - PROPERTY COVERAGE
COVERAGE A (DWELLING)
We cover:
1. The dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

The policy defines "residence premises":

---

[1] TEX. DEP'T OF INS., TEX. HOMEOWNERS POLICY–FORM A (2002), http://ic.iiat.org/docs/Texas_forms/HO/HOA.pdf.

[2] Greene claimed extra-contractual damages for negligence, negligent misrepresentations, fraudulent non-disclosure, breach of constructive trust, breach of the duty of good faith and fair dealing, and misrepresentations and violations of the Insurance Code and Deceptive Trade Practices Act.

[3] Section I.B. provides personal property coverage and Section II provides liability coverage.

9. "Residence Premises" means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy.

"Section I - Conditions" contains the policy language at issue:

13. Vacancy. If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

Dwelling coverage for periods of vacancy lasting more than sixty days was available through a TDI-approved endorsement to the policy. Greene's policy had several endorsements, but it did not have Endorsement TDP-011 that provided dwelling coverage during an extended vacancy.[4] *See* TEX. STATE BD. OF INS., ENDORSEMENT NO. TDP-011 (July 8, 1992). The parties stipulated that the vacancy of Greene's house for more than sixty days was not causally related to the fire damage the house suffered.

Both parties moved for summary judgment as to the breach of contract claim. In her motion, Greene asserted, in part, that Texas Insurance Code § 862.054 (commonly referred to as the anti-technicality statute) precluded Farmers from raising the vacancy clause as a defense. She further asserted that if the anti-technicality statute did not apply, both this Court's precedent and Texas

---

[4] Greene contends that Farmers should be precluded from raising any arguments about premium charges, form policies, and endorsements because they were not mentioned in the trial court or the court of appeals. We disagree. We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court. *See Nall v. Plunkett*, 404 S.W.3d 552, 555-56 (Tex. 2013) (holding that we do not decide issues not presented in the trial court).

3

public policy precluded Farmers from denying the claim because the vacancy did not prejudice Farmers nor was it causally related to Greene's loss.

The trial court denied Farmers' motion, granted Greene's, severed "all claims, causes, actions or defenses which are not disposed of by judgment on Plaintiff's breach-of-contract cause of action,"[5] and rendered final judgment for Greene on the contract claim. Farmers appealed the ruling on the breach of contract claim; Greene did not appeal the dismissal of her other claims.

The court of appeals reversed and rendered judgment for Farmers. It held that because the vacancy clause unambiguously suspended dwelling coverage after sixty days of vacancy, "describing the vacancy exclusion in terms of a breach or violation is a nonsequitur." *Farmers Ins. Exch. v. Greene*, 376 S.W.3d 278, 283 (Tex. App.—Dallas 2012, pet. granted). The appeals court concluded that Farmers was not required to establish that the vacancy contributed to cause the loss in order to assert the vacancy clause as a defense because (1) the anti-technicality statute did not apply, (2) this Court's decisions did not require such a showing, and (3) public policy did not require it. *Id.* at 285.

Greene argues that the court of appeals erred in reaching each of the foregoing conclusions. She also urges that in the event we do not reverse the court of appeals' judgment, we should remand the case to the court of appeals and direct it to clarify its judgment. We examine her arguments in turn.

---

[5] The trial court's judgment provided that:

> The parties having agreed to severance of all remaining claims and defenses, so that a final appealable Judgment can and is HEREBY entered in this original cause. All claims, causes, actions or defenses which are not disposed of by judgment on Plaintiff's breach-of-contract cause of action or the severance as described herein are otherwise disposed of and are dismissed.

## II. Discussion

### A. Texas Insurance Code § 862.054

Section 862.054 provides:

**Fire Insurance: Breach by Insured; Personal Property Coverage.**

Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy or contract of insurance on personal property, or of an application for the policy or contract:
      (1) does not render the policy or contract void; and
      (2) is not a defense to a suit for loss.

TEX. INS. CODE § 862.054.

Greene does not argue that the statute applies because she breached or violated her insurance policy in the usual sense of having violated a duty or obligation she assumed in the policy. Rather, she reasons that the statute applies because the Legislature's use of "breach" in the statute encompasses the situation where a policy condition is "triggered"; when she vacated the house she triggered operation of the vacancy clause; so she breached the vacancy clause within the meaning of the statute. *See id.* She further argues that defining "breach" to exclude "trigger" will lead to absurd results. We disagree with both arguments.

In examining the statutory language to see if Greene is correct, we follow familiar principles. We review issues of statutory construction de novo, *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003), with our primary objective being to give effect to the Legislature's intent. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning

5

is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Id.* We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Id.*

"Breach" of a contract occurs when a party fails to perform an act that it has contractually promised to perform. *See* BLACK'S LAW DICTIONARY 225 (10th ed. 2014) (defining "breach of contract" as a "[v]iolation of a contractual obligation by failing to perform one's own promise"); *see also U.S. v. Winstar Corp.*, 518 U.S. 839, 909-10 (1996) (finding a party unable to perform its promise liable for breach); *Orix Cap. Mkts., L.L.C. v. Wash. Mut. Bank*, 260 S.W.3d 620, 623 (Tex. App.—Dallas 2008, no pet.); RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1981). Similarly, a "violation" is "the contravention of a right or duty." BLACK'S LAW DICTIONARY 1800 (10th ed. 2014). A "triggering" condition or event is one that brings something else into effect. *See id.* at 356 (defining "triggering condition" as "[a] circumstance that must exist before a legal doctrine applies").

Greene's first argument fails because, as the court of appeals noted, the vacancy clause does not contain a promise by or obligation on behalf of Greene to occupy her house, thus her vacating the house was neither a breach nor a violation of the clause. *See Greene*, 376 S.W.3d at 283. The vacancy clause is substantively an agreement between the insured and Farmers that Farmers will continue insuring the house for sixty days after it no longer is her residence, when its being used as her residence is the underlying premise of the policy's dwelling coverage.[6] And re-defining "breach"

---

[6] Inserting appropriate definition language, Coverage I.A. (Dwelling) as related to the facts before us says that the policy covers a dwelling where an insured *resides*.

Greene stipulated that she had moved from the house and removed a substantial part of her personal property, thereby no longer residing in it under the policy terms. She does not contend that she intended to ever reside there again.

6

by labeling her actions as "triggering" operation of the vacancy clause as a breach, when her actions in vacating the house were specifically contemplated by and addressed in the policy, finds no basis in the common meaning of the word "breach," in a statutory definition, or in the context of section 862.054.

Her second argument likewise fails. She argues that refusing to include "trigger" in the definition of "breach" yields absurd results because that will allow insureds who breach policy provisions to recover their losses pursuant to section 862.054 while she will be precluded from recovering her loss even though she did not breach any policy provisions. While her argument has appeal, it does so only when the vacancy clause is considered apart from other parts of the policy, and that is not how policies are interpreted.

When interpreting an insurance contract we consider all its parts, read all of them together, and give effect to all of them. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Ordinarily we seek to ascertain the intent of the parties as expressed in the language of the contract. *Id.* But here the Policy is a standard policy form prescribed by TDI. The Legislature has charged TDI with regulating the business of insurance, a task that expressly requires it to approve forms used by insurance companies in writing residential property insurance. TEX. INS. CODE §§ 31.002(1), 2301.003(b)(2), 2301.006(a). Pursuant to the Legislature's mandate, TDI prescribed the form Farmers used for Greene's policy. TDI has also approved a form endorsement that homeowners can purchase to provide coverage during extended vacancies. When we interpret such form policies, the intent of the parties is not what counts because they did not write the contract. *Fiess v. State Farm*

7

*Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). Rather, the policy language is interpreted according to the ordinary, everyday meaning of its words to the general public. *Id.*

The policy issued to Greene provides that the insurance covers "[t]he dwelling on the **residence premises**" shown on the declarations page, and defines "residence premises" to be the dwelling and structures attached to the dwelling "where an **insured** *resides or intends to reside* within 60 days after the effective date of this policy." (Emphasis added). The vacancy clause is in the Section I-Conditions part of the policy, but when the clause is read together with the provisions of Section I.A.-Property Coverage (Dwelling), the clause is substantively an agreement about what happens given a particular instance in which the insured no longer "resides" in the insured dwelling because it is vacant: it is an agreement that when the insured vacates the dwelling and no longer resides there—thus removing the premise underlying the HO-A policy that the dwelling is the insured's residence—then full coverage remains in place for sixty days beyond the vacancy date, after which there is no coverage for the dwelling but the remainder of the insurance remains in force. The court of appeals determined that the vacancy clause functions as an exclusion because it "excepts a specific condition (vacancy) from coverage." *Greene*, 376 S.W.3d at 282 (citing BLACK'S LAW DICTIONARY 563 (9th ed. 2009) and 17 WILLISTON ON CONTRACTS § 49.11 (4th ed. 1992) (explaining that an exception or exclusion limits liability or carves out certain types of loss to which coverage does not apply)); *see PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 635 (Tex. 2008) ("Exclusions and conditions are in effect two sides of the same coin; exclusions avoid coverage if the insured does something, and conditions avoid coverage unless an insured does something."). But the clause in actuality addresses the scope of coverage instead of being an exclusion. That is because

8

the clause does not limit Farmers' liability as to, or carve out, a particular type of loss. Rather, it effectively expands coverage to encompass a sixty-day period beyond the time the homeowner no longer resides in the dwelling, and the premise of the HO-A policy is that it covers property in which the insured resides or intends to reside.

We recognize that extending dwelling coverage for only sixty days after vacancy occurs might seem to be setting an arbitrary bright line, but it is no less arbitrary than the lines established by specified dates on which coverage begins and ends. And the sixty day provision cuts both ways: there would have been coverage for the loss if the fire had occurred fifty-nine days after vacancy occurred, regardless of the fact that Greene no longer resided there. We fail to see how the vacancy clause's specifying the times for which Farmers did not insure the risk of loss for the dwelling yields any more of an absurd result than does the policy's specifying the beginning and ending dates for the policy as a whole. If we were to re-formulate the definition of "breach" as Greene asks us to do, we would be usurping the legislative prerogative or re-making the contract to which the parties agreed. We decline to do either.

We conclude that the term "breach" as used in section 862.054 does not include a homeowner's actions in vacating her premises and "triggering" the vacancy clause. Nor does excluding such actions from being a breach within the meaning of section 862.054 yield absurd results. The court of appeals correctly determined that section 862.054 does not apply to Greene's claim.

In addition to maintaining that Greene's actions were not a breach of the policy provisions as contemplated by section 862.054 and that failing to consider her vacating her house as a breach

9

does not work an absurd result, Farmers argues that section 862.054 applies only to personal property insurance. The court of appeals considered the latter argument and concluded that Farmers was correct. *Greene*, 376 S.W.3d at 283. But the appeals court expressly noted that its decision "does not depend upon whether the statutory language pertains only to fire insurance on personal property or to all types of property covered by fire insurance." *Id.* Because of our conclusion, we do not address the question of whether section 862.054 applies to real property. *E.g.*, *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions.").

## B. Prejudice

Citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex. 1994), and *PAJ*, Greene next argues that Farmers cannot rely on the vacancy clause to deny her claim when the property's being vacant did not prejudice Farmers. Ultimately, her argument fails.

This Court has applied the prejudice requirement several times in the recent past. *See Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750 (Tex. 2013); *Fin. Indus. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877 (Tex. 2009); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374 (Tex. 2009); *PAJ*, 243 S.W.3d at 636; *Hernandez*, 875 S.W.2d at 693. We rooted those decisions in contract law, focusing on the principle that one party is excused from performing under a contract only if the other party commits a material breach. *See Lennar Corp.*, 413 S.W.3d at 756; *Fin. Indus. Corp.*, 285 S.W.3d at 879; *Prodigy*, 288 S.W.3d at 382; *PAJ*, 243 S.W.3d at 636; *Hernandez*, 875 S.W.2d at 693. We noted that the materiality of an insured's breach is determined by several factors, including the extent to which the breach deprived the insurer of the benefit that

10

it reasonably could have anticipated from full performance by the insured. *Hernandez*, 875 S.W.2d at 693 n.2; *see also Lennar Corp.*, 413 S.W.3d at 753; *Fin. Indus. Corp.*, 285 S.W.3d at 879; *Prodigy*, 288 S.W.3d at 375; *PAJ*, 243 S.W.3d at 632. If the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance. *See, e.g.*, *Hernandez*, 875 S.W.2d at 693-94 (determining insured's breach of a settlement-without-consent clause was immaterial because insurer remained in the same position it would have occupied had the insured complied with the provision); *Lennar Corp.*, 413 S.W.3d at 756 (same).

Analyzing the extent to which Farmers was deprived of the benefit it reasonably could have anticipated from Greene's full performance—the materiality of her failure to fully perform her obligations under the policy—begins with analyzing her failure to perform; in other words, analyzing her breach. But Greene did not breach her obligations under the policy by moving out of her home. As discussed above, considering all the policy's parts and reading them together, it is clear that the parties simply agreed on the effect of Greene's vacating her house. Because she did not breach her obligations under the policy, including its vacancy clause, the question of materiality of a breach and its subsidiary issue of prejudice are not raised.

At bottom this case is not about breach, it is about what coverage Greene purchased and Farmers agreed to provide. Greene seeks to have us re-write the insurance policy under the guise of "construing" it so Farmers provides coverage it did not agree to provide, and Greene receives coverage she did not contract for. The concurrence asserts that this case cannot be meaningfully distinguished from the analyses and results in *Lennar*, *Prodigy*, *PAJ*, and *Hernandez*, and that those

11

cases should be limited to the policy provisions at issue in them. ___ S.W.3d ___ (Boyd, J., concurring). We disagree.

In *Hernandez* we applied the contract principle that only when one party commits a material breach is the other party's performance excused. 875 S.W.2d at 692. That principle was the basis for our decisions in *PAJ*, *Prodigy*, and *Lennar*. To determine materiality in the contexts presented by those cases we considered the extent to which the parties we referred to as nonbreaching parties—the insurers—would have been deprived of the benefit that they could have reasonably anticipated from full performance, or whether the obligations the insureds did not comply with were material parts of the bargained-for exchange. In all four cases we concluded either that the insurers received the benefits they expected from the contracts, or that the policy terms at issue were not a part of the bargained-for exchanges between the insurers and insureds.

In *Hernandez*, for example, we recognized that in the context of a policy containing a settlement-without-consent clause, an insured's breach—settlement without the insurer's consent—can extinguish a valuable subrogation right depriving the insurer of an anticipated benefit under the policy. 875 S.W.2d at 693. But in that case, the insurer had not incurred any financial loss with regard to its subrogation rights even though the insured settled without consent of the insurer. *Id.* at 694. For that reason the insurer was not excused from its obligation to perform. *Id.* Similarly, in *PAJ* an insurer was not prejudiced by the insured's failure to notify the insurer of a claim "as soon as practicable" as required by the policy. 243 S.W.3d at 631. We held that "an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation." And in *Prodigy* we concluded that "Prodigy's obligation to

12

provide [the insurer] with notice of a claim 'as soon as practicable' was not a material part of the bargained-for exchange" so coverage was not defeated. 288 S.W.3d at 382. Finally, in *Lennar* we held that the policy requirements at issue—prohibiting an insured from voluntarily making any payment or assuming an obligation without the insurers' consent—were not "essential to coverage." 413 S.W.3d at 756.

All of these cases involved an insured's failing to do something it agreed to do or doing something it agreed not to do. We looked to the facts to determine whether the insured deprived the insurer of benefits the insurer reasonably could have anticipated if the insured performed its obligation or whether the obligation in question was part of the bargained-for exchange. But there is not an obligation here that Greene failed to perform. As previously discussed, Greene was not required to live in her house under the policy, nor did she agree that she would not vacate the house. Rather, the insuring agreement specified the risk Farmers accepted and Greene purchased: the dwelling would be covered until sixty days after she vacated it unless she paid additional premiums for an endorsement. Accordingly, this case is different from the prejudice analysis that formed the basis of our decisions in *Hernandez*, *PAJ*, *Prodigy*, and *Lennar* and the principle underlying our decisions in those cases is not determinative here.

### C. Public Policy

Last, Greene maintains that both the public policy underlying the anti-technicality statute and our decision in *Puckett v. U.S. Fire Insurance Co.*, 678 S.W.2d 936 (Tex. 1984) preclude Farmers' denying her claim based on the vacancy condition. Again, we disagree.

13

In *Puckett*, the insurer denied a claim for damages to an insured airplane that crashed. 678 S.W.2d at 937. The insurer relied on policy provisions requiring the airplane to have a current airworthiness certificate and suspending coverage during the time it did not. *Id.* When the accident occurred the aircraft's certificate had lapsed because the plane's annual inspection was overdue. *Id.* But the crash was caused by pilot error and was not causally related to whatever caused the airworthiness certificate to have lapsed. *Id.* Although the policy did not require a causal connection between a breach by the insured and a loss in order for the loss to not be covered, the Court concluded it was "against public policy to allow the insurance company in [a] situation [where the accident was caused by something unquestionably covered by the policy] to avoid liability by way of a breach that amounts to nothing more than a technicality." *Id.* at 938. The decision was based, in large part, on the public policy underlying the anti-technicality statute directed to fire insurance policies. *See id.* The Court reasoned that by enacting the statute the Legislature expressed the public policy of the state that insurance coverage could not be lost based on a technical breach of policy terms. *Id.* Moreover, the Court determined that allowing the insurer to deny the claim because the airworthiness certificate was out of date would result in a windfall for the insurer: the insurer would have collected a premium even though it had no risk exposure because of the lapsed certificate. *Id.*

The court of appeals in this case distinguished *Puckett* on the basis that the vacancy clause in Greene's policy is not properly characterized as a "technicality." *Greene*, 376 S.W.3d at 285. Because of the vacancy clause's relationship to the scope of coverage, we agree with the court of appeals that the clause is a material provision of Greene's policy and the coverage it provides. This

14

conclusion is reinforced by the fact that, as discussed above, a TDI-approved endorsement providing dwelling coverage during an extended vacancy is available for an additional premium.

But Farmers is not precluded from relying on the vacancy clause for two other reasons. First, Greene did not breach the clause or the policy, as we have discussed above. Second, regardless of the breach and materiality questions, the general public policy underlying the anti-technicality statute is outweighed here by the specific public policy expressed in TDI's prescribing the HO-A form for insurers to use in Texas.

The Legislature establishes public policy through its enactments. *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 665 (Tex. 2004) ("The legislature determines public policy through statutes it passes."); *see also* TEX. INS. CODE §§ 31.002(1), 2301.006(a), 2301.008. In *Puckett*, the Court referenced only the anti-technicality statute as its guide, but there is more to consider in this case. *See Puckett*, 678 S.W.2d at 938. First, the Legislature has tasked TDI with prescribing and approving forms to be used by insurance companies in writing residential property insurance—which TDI did for the HO-A form Farmers used in writing Greene's policy. TEX. INS. CODE §§ 2301.003(b)(2), 2301.006(a). Greene points to no such legislation regarding the aviation policy under consideration in *Puckett*. Nor does Greene argue that TDI exceeded its authority by adopting the HO-A form or the associated TDP-011 endorsement providing dwelling coverage during an extended vacancy. Second, after *Puckett*, the Legislature expressly delegated authority to TDI to make initial decisions about whether provisions in an insurance policy violate public policy. TEX. INS. CODE § 2301.007(a)(2). In our view, TDI's prescribing the HO-A form and its associated endorsement TDP-011 reflects a specific public policy choice balancing the interests of insureds and

15

insurers. The more specific expression of public policy reflected in TDI's adoption of the HO-A form and the associated endorsement providing separate coverage terms pursuant to legislative directive should be given deference over the more general expression of public policy reflected in section 862.054.

Accordingly, neither the public policy underlying the anti-technicality statute nor our decision in *Puckett* preclude Farmers from relying on language in the vacancy clause in response to Greene's claim.

### III. Disposition

Greene requests that in the event we do not reverse the judgment of the court of appeals, then we remand the matter to that court for it to "clarify and specifically state that its Opinion and Judgment do not address, much less rule upon, Greene's claims of lack of prejudice, waiver, and/or estoppel." We do not consider it necessary to do so. The trial court judgment severed "all claims, causes, actions or defenses which are not disposed of by judgment on Plaintiff's breach-of-contract cause of action." Greene did not appeal the severance or the order of dismissal. Further, the court of appeals' opinion is detailed as to its holding and specifically indicates that the court did not intend to address more than it expressly did when it noted that it did not consider one claim Greene made on appeal because "this claim is among the claims severed from the instant case." *Greene*, 376 S.W.3d at 286 n.3.

The judgment of the court of appeals is affirmed.

_____

Phil Johnson
Justice


**OPINION DELIVERED:**  August 29, 2014