Opinion by Justice Whitehill
This is an insurance coverage dispute. Appellants sued appellees for uninsured *588 motorist benefits after appellant Brian Loncar[1] was injured in a traffic accident with a City of Dallas fire truck. The trial court granted summary judgment for appellees.
The uninsured motorist provision here covers "damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle.' " It has been established as a matter of law that the fire truck operator's official immunity bars the Loncars from recovering against him or the City of Dallas. The pivotal question therefore is whether that result defeats coverage under this policy language. We conclude that it does because the policy's unambiguous terms do not provide coverage when the insured is injured in an accident and the other driver is legally protected by immunity. We therefore affirm the summary judgment.
I. BACKGROUND
We described the traffic accident giving rise to this case in City of Dallas v. Loncar , No. 05-12-00705-CV, 2014 WL 198408 (Tex. App.-Dallas Jan. 16, 2014, pet. denied) (mem. op.). It suffices here to say that in May 2008 a car driven by Brian Loncar collided with a City of Dallas fire truck in the middle of an intersection. The fire truck driven by Paul Ferguson was responding to a fire alarm call and had its emergency lights and siren activated.
Loncar sued the City of Dallas for personal injuries. Appellant Sue Loncar later joined the suit as a plaintiff, and she and Loncar added claims on behalf of their minor children.
The City filed a plea to the jurisdiction based on immunity, which the trial court granted in part and denied in part. The City took an interlocutory appeal from that order.
Meanwhile, the Loncars amended their petition to join appellees as defendants. They alleged that appellees issued to Loncar insurance policies covering his damages from the accident. Summary judgment evidence later showed that appellee Progressive had issued Brian Loncar & Associates, PC a commercial auto insurance policy and appellee Chubb had issued Brian and Sue Loncar an excess insurance policy that included excess uninsured/underinsured motorist coverages. The Loncars alleged that appellees refused to pay on the policies and sued appellees for (i) breach of contract, (ii) Texas Insurance Code violations, and (iii) declaratory judgment.
In January 2014, we issued our opinion holding that the City conclusively established that Ferguson was acting in good faith at the time of the accident and thus enjoyed official immunity. Id. at *6. Accordingly, we rendered judgment dismissing all remaining claims against the City of Dallas for lack of jurisdiction due to governmental immunity. Id. at *7. We denied rehearing, and the Texas Supreme Court denied the Loncars' petition for review.
In October 2015, each appellee separately moved for summary judgment on multiple grounds. The Loncars responded. The trial court held a hearing, granted appellees' motions, and signed a take-nothing judgment.
Chubb later moved to vacate and re-enter the judgment to make sure it had preserved every ground that Progressive had raised in its motion. Chubb then filed an amended summary judgment motion.
*589 The Loncars responded to Chubb's amended motion.
The trial judge signed a new order granting Progressive's summary judgment motion, a separate order granting Chubb's amended summary judgment motion, and a new take-nothing final judgment. The Loncars timely appealed.
II. ISSUES PRESENTED AND STANDARD OF REVIEW
The Loncars present six issues. The first three are coverage arguments regarding uninsured motorist coverage under the Progressive policy. Their fourth issue argues that their suit against appellees is not premature. Their fifth issue concerns their statutory bad faith claims. Their sixth issue argues that Chubb owes them coverage even if Progressive does not.
We review an order granting summary judgment de novo. Durham v. Children's Med. Ctr. of Dallas , 488 S.W.3d 485, 489 (Tex. App.-Dallas 2016, pet. denied).
When we review a traditional summary judgment for a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. Id.
III. ANALYSIS
A. Issue One: Did appellees conclusively prove that the Progressive policy provides no uninsured motorist coverage because the Loncars are not "legally entitled to recover" from Ferguson or the City of Dallas?
The Loncars' first issue concerns this clause in the uninsured/underinsured motorist coverage endorsement in Progressive's insurance policy:
We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured[.]"
(Emphasis added.) The question is whether appellees conclusively proved that the Loncars are not "legally entitled to recover" from Ferguson or the City of Dallas. We conclude that under the unambiguous policy terms the answer is yes because our prior opinion conclusively established that the Loncars are not legally entitled to recover from the fire truck's owner or operator due to their governmental and official immunity.
1. Applicable Law
We construe insurance policies using ordinary contract interpretation rules. Nassar v. Liberty Mut. Fire Ins. Co. , 508 S.W.3d 254, 257 (Tex. 2017) (per curiam). Unless the policy provides otherwise, we give words and phrases their ordinary and generally accepted meanings, reading them in context and in light of grammar and common usage rules. Id. at 258.
If only one interpretation is reasonable, the policy is unambiguous, and we adopt that interpretation. Id. A policy is ambiguous if it is genuinely subject to more than one meaning after we apply the pertinent contract interpretation rules. Id. But, if the policy is ambiguous, we adopt the interpretation that favors the insured, even if the insurer's interpretation is equally or more reasonable. Id. However, we may not rewrite insurance policies under *590 the rubric of interpretation.[2] See Great Am. Ins. Co. v. Primo , 512 S.W.3d 890, 893 (Tex. 2017) ("We also refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements.").
2. What does "legally entitled to recover" mean in this context?
a. Plain language analysis
For coverage to exist under this clause, the Loncars must be "legally entitled to recover" from the City of Dallas (the fire truck's owner) or Ferguson (the fire truck's operator) because of Loncar's injuries caused by the accident. The parties propose different interpretations of the phrase "legally entitled to recover." We must determine whether their interpretations are reasonable.
The Loncars argue that the clause means coverage exists if Ferguson's negligence caused the accident. They give no text-based support for their interpretation, and instead rely heavily on a Texas appellate decision that we discuss below. They also argue that the insurers' interpretation is unreasonable because it would (i) discourage settlements and (ii) effectively extend immunity to uninsured motorist insurers.
Appellees, by contrast, interpret the clause to mean that uninsured motorist coverage exists here if the facts supported the Loncars' legal ability to overcome official immunity in a claim against Ferguson. That is, they argue that uninsured motorist coverage exists if the insured has a legally enforceable right to recover judgment from the uninsured motor vehicle's owner or operator.
We conclude that the policy is unambiguous and that appellees' interpretation is correct. Again, the insuring clause provides, "We will pay damages which an 'insured' is legally entitled to recover from" the uninsured vehicle's owner or operator. Giving the phrase "legally entitled to recover" its plain and ordinary meaning in context means that damages are covered if, on the facts, the insured has a legal right to a judgment from the owner or operator. Cf. Brainard v. Trinity Universal Ins. Co. , 216 S.W.3d 809, 818 (Tex. 2006) ("[T]he UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist.") (emphasis added). Thus, if the insured has no legal right to recover anything from the vehicle's owner or operator, whether because of the motorist's lack of fault, immunity, or some other substantive defense, the insured is not "legally entitled to recover" any damages against the owner or operator, and the insured's damages are not covered. See ids="8326389" index="10" url="https://cite.case.law/sw3d/216/809/#p818">id. (uninsured motorist benefits "are conditioned upon the insured's legal entitlement to receive damages from a third party").
b. Judicial interpretations
The Loncars rely heavily on United Services Automobile Ass'n v. Blakemore , 782 S.W.2d 277 (Tex. App.-Waco 1989, writ denied), to support their policy interpretation. Because Blakemore relies on the Texas Supreme Court's decision in Franco v. Allstate Insurance Co. , 505 S.W.2d 789 (Tex. 1974), we discuss Franco first.
*591 In Franco , Raul Franco was injured and his daughter was killed in an accident caused by an uninsured motorist. Id. at 790. Franco and his wife did not sue the motorist, but about three years later they sued Allstate for uninsured motorist benefits. Allstate won summary judgment based on the two-year statute of limitations. The court of civil appeals reversed in part, holding that a four-year limitations period applied to Franco's claim for his own injuries. Id. at 790. Both sides sought Texas Supreme Court review. Thus, the sole question before the supreme court was whether the Francos' claims against Allstate were governed by a two-year or a four-year limitations period. See ids="10144292" index="15" url="https://cite.case.law/sw2d/505/789/">id. at 790-91. The court concluded that the Francos' claims, as to both Raul Franco's injuries and their daughter's death, were contract claims governed by the four-year contract statute of limitations. Id. at 793.
The following paragraph in Franco addresses the phrase "legally entitled to recover":
Further, the phrase "legally entitled to recover" has been interpreted to mean simply that the insured must be able to show fault on the part of the uninsured motorist and the extent of the resulting damages, and that it is not a bar to recovery from the insurer because the tortfeasor could have interposed a statute of limitations. [Citing cases from New York and Louisiana.] The same cases also hold that the insurer, in defending its liability under the contract, does not succeed to the right of the uninsured motorist to interpose the procedural defense of limitations which would be available to the motorist in a tort action.
Id. at 792. The court's statement that "legally entitled to recover" simply means that the uninsured motorist was at fault and caused the insured's damages arguably supports the Loncars' position in this case. But any support is minimal, for two reasons:
One, the paragraph is dicta. The question presented was whether the Francos' claims against their uninsured motorist insurer for policy benefits were governed by the four-year contract statute of limitations or the two-year limitations statute. The supreme court resolved that issue by holding that the plaintiffs' claims for policy benefits were contract claims governed by the four-year limitations statute applicable to contract claims. Id. Thus, having resolved the limitations question on that basis, the court did not have to include the above quoted paragraph in its discussion. See ids="10144292" index="19" url="https://cite.case.law/sw2d/505/789/">id.
Two, the paragraph does not actually analyze the policy's text.
Accordingly, Franco provides no useful guidance on the question we address in this case.
The Waco Court of Appeals' Blakemore decision, however, is more closely on point. In that case, Blakemore was injured in an accident in which the other driver was Daniel Brown, a United States Army private. Brown was acting within the scope of his employment at the time of the accident, and he had no applicable liability insurance. The parties stipulated that Brown's negligence proximately caused the accident. Blakemore sued his uninsured motorist insurance carrier and won summary judgment. The Waco Court of Appeals affirmed, relying on the Franco dicta discussed above to interpret the same policy language that we address. 782 S.W.2d at 278-79. After quoting part of the Franco dicta, the court said:
Thus "legally entitled to recover" goes to the ability to establish the uninsured driver's fault and the extent of insured's damages in order to recover, and does not extend the uninsured motorist's statute *592 of limitation defense or some governmental immunity defense the U.S. has against suit by Captain Blakemore to the insurance company.
Id. at 279 (emphasis added).
But, immunity was not involved in Franco , and Franco 's dicta was limited to the "procedural defense" of limitations, so Blakemore 's expansion of the Franco dicta to an immunity defense is unwarranted by Franco .
Nor does Blakemore contain a textual analysis of the policy language explaining how and in what sense Blakemore was "legally entitled to recover" from either Brown or the United States. Instead, the Blakemore opinion follows the above-quoted sentence with the premise that a contrary interpretation would make the uninsured motorist coverage meaningless:
The policy language would be rendered absolutely meaningless by interpreting "legally entitled to recover" as the ability to sue the United States. If such were the case there could never be a case where an insured motorist could bring an uninsured claim against his carrier for an accident with a government vehicle.
Id.
On the contrary, giving the phrase "legally entitled to recover" its plain meaning-and thus holding that there is no coverage if the uninsured motorist is immune from liability-doesn't make the coverage meaningless. Rather, for example, the coverage applies where the facts would allow the plaintiff to overcome the immunity defense. Interpreting an insuring clause to cover some losses but not others does not make it meaningless.
In short, nothing in Blakemore persuades us that we should give the phrase "legally entitled to recover" any meaning other than its plain and ordinary meaning.
The Loncars also mention our opinion in Pryor v. State Farm Mutual Automobile Insurance Co. , No. 05-95-00004-CV, 1995 WL 479634 (Tex. App.-Dallas Aug. 9, 1995, writ denied) (not designated for publication). In Pryor we quoted the passage from Franco in which the supreme court noted that the phrase "legally entitled to recover" has been interpreted to mean the uninsured motorist's fault and the resulting damages' extent. Id. at *3. But that statement was dicta because Pryor actually turned on whether the insured or the insurer had conclusively proved the amount of the insured's damages. See id. at *3-4. Moreover, Pryor is an unpublished opinion with no precedential value. See TEX. R. APP. P. 47.7(b). For both of these reasons, Pryor is not controlling.
In their reply, the Loncars argue that opinions from several other states support their policy interpretation. See, e.g. , Jenkins v. City of Elkins , 230 W.Va. 335, 738 S.E.2d 1 (2012). We have reviewed those opinions and do not find them persuasive.
We do, however, find persuasive two sister court opinions that support our interpretation. Those cases concern whether an insured could recover uninsured motorist benefits if (i) the insured received workers' compensation benefits for the accident and (ii) the owner and operator of the allegedly uninsured motor vehicle were immune from liability under the workers' compensation law's exclusive-remedy provisions. Soledad v. Tex. Farm Bureau Mut. Ins. Co. , 506 S.W.3d 600 (Tex. App.-Austin 2016, pet. denied) ; Valentine v. Safeco Lloyds Ins. Co. , 928 S.W.2d 639 (Tex. App.-Houston [1st Dist.] 1996, writ denied). Both courts held that there was no coverage because the workers' compensation bar meant that the insured was not "legally entitled to recover" from the alleged tortfeasors. Soledad , 506 S.W.3d at 606 ; Valentine , 928 S.W.2d at 644. We see *593 no reason to interpret "legally entitled to recover" differently in official immunity and workers' compensation cases.[3]
c. Other arguments
The Loncars make two other arguments to support their contract interpretation.
First, the Loncars argue that our contract interpretation is contrary to public policy because it would have a chilling effect on settlements between insureds and underinsured motorists. Specifically, they contend that Texas public policy encourages early settlement of claims, see TEX. CIV. PRAC. & REM. CODE § 154.002, and that settlement agreements generally include terms specifically disclaiming liability. The underlying premise is that a settling uninsured motorist's liability denial would somehow prejudice the insured's suit against his or her uninsured motorist insurer, which result would discourage the plaintiff from settling with the uninsured motorist. We disagree because whether the motorist admits or denies liability in a settlement document will not affect the insured's claim against the insurer. See Brainard , 216 S.W.3d at 818. Thus, even if public policy favoring settlement were relevant to this contract interpretation question, our interpretation would not affect the parties' settlement incentives in this context.
Second, the Loncars argue that our interpretation would effectively extend sovereign immunity to insurers when the public policy underlying sovereign immunity[4] -protecting the public treasury-does not justify such an extension. Again, we disagree because Ferguson's official immunity was not an absolute shield to liability. Rather, it allowed him (and the City) to defeat liability by proving that he acted in good faith while performing a discretionary function in the course and scope of his employment, see City of Dallas v. Brooks , 349 S.W.3d 219, 224 (Tex. App.-Dallas 2011, no pet.), meaning that a reasonable person in Ferguson's position could have thought the facts justified his actions. See City of Dallas v. Loncar , 2014 WL 198408, at *6. Thus, the Loncars potentially could have established that Ferguson was liable for the accident, even though evidence of mere negligence would not suffice. See Brooks , 349 S.W.3d at 229 ("[E]vidence of negligence alone will not controvert competent evidence of good faith.").
3. Conclusion
We are not persuaded to rewrite the insurance policy's unambiguous text. Rather, the proper remedy for this situation, if needed, is for the policy writers to make any necessary changes to the policy language, not for us to abandon the traditional contract interpretation rules that furnish the predictability essential to the modern economy. See Sonat Expl. Co. v. Cudd Pressure Control, Inc. , 271 S.W.3d 228, 235 (Tex. 2008) ("Enforcing contracts according to their own terms ... enhances certainty, predictability, and uniformity of result, and facilitates commerce and relations *594 with other states and nations.") (footnotes omitted).
Because the Progressive insurance policy provides no uninsured/underinsured motorist coverage for this accident, we overrule the Loncars' first issue. And, we need not address their second, third, and fourth issues, which address other summary judgment grounds also attacking the Loncars' contract claims.
B. Issue Six: Is Chubb liable on its excess policy even though Progressive owes the Loncars no coverage on its primary policy?
Chubb won summary judgment on the ground that its excess policy provides uninsured motorist coverage identical to that provided by the Progressive policy. Thus, Chubb argued that the Chubb policy provides no coverage because the Progressive policy does not cover this accident. The Loncars, however, argue that Chubb was not entitled to summary judgment because Chubb's interpretation of its policy leads to absurd results, thus making it ambiguous. For the reasons that follow, we disagree.
Under the heading "Excess uninsured motorists protection," the Chubb policy provides that:
We cover damages for bodily injury and property damage a covered person is legally entitled to receive from the owner or operator of an uninsured motorized land vehicle. We cover these damages in excess of the underlying insurance or the Required Primary Underlying Insurance, whichever is greater, if they are caused by an occurrence during the policy period, unless otherwise stated.
....
This coverage will follow form.
The policy also defines "follow form":
"Follow form" means: We cover damages to the extent they are both covered under the Required Primary Underlying Insurance and, not excluded under this part of your Masterpiece Policy.... When this part of your policy is called upon to pay losses in excess of the required primary underlying policies exhausted by payment of claims, we do not provide broader coverage than provided by such policies. When no primary underlying coverage exists, the extent of coverage provided on a follow form basis will be determined as if the required primary underlying insurance had been purchased from us.
Based on these provisions, Chubb argues that its policy provides excess uninsured motorist coverage only if the Progressive primary policy provides coverage.
The Loncars argue, however, that certain Chubb policy provisions mean that Chubb would have owed the Loncars coverage had the Loncars not bought the Progressive policy. This, the Loncars argue, leads to an absurd and inequitable result.
The Loncars rely on two Chubb policy provisions to support their premise. One is the last sentence quoted above: "When no primary underlying coverage exists, the extent of coverage provided on a follow form basis will be determined as if the required primary underlying insurance had been purchased from us." The other is this:
Failure by you or your family members to comply with this condition [i.e., the duty to buy underlying primary insurance in specific minimum amounts] shall not invalidate this part of your policy. In the event of such failure, we shall only be liable in excess of the foregoing minimum amounts and to no greater extent *595 with respect to coverages, amounts and defense costs than we would have been had this condition been complied with by your purchase of the Required Primary Underlying Insurance.
According to the Loncars, these provisions mean that the Chubb excess policy would have served as their primary insurance policy had the Loncars not bought the Progressive policy. They further argue that in such a circumstance they would have enjoyed broader coverage under the Chubb policy than they do under the Progressive policy because the Chubb policy lacked certain exclusions found in the Progressive policy. They thus contend that it would be absurd to "punish" the Loncars with narrower coverage because they complied with the Chubb policy by buying the Progressive policy.
Chubb, however, correctly argues that the Loncars misread the Chubb policy. The Chubb policy would not act as a primary policy had the Loncars failed to buy a primary policy. Rather, Chubb would "only be liable in excess of the foregoing minimum amounts," meaning the minimum underlying coverages that the Chubb policy obligated the Loncars to obtain. That is, the Chubb policy would not drop down had Loncar not bought the Progressive policy; instead, Loncar would have been self-insured for the primary layer.
The Loncars' other absurdity argument is that the Progressive policy contains certain exclusions that the Chubb policy does not; therefore, they would have been better off not buying the Progressive policy because then the Chubb follow-form clause would not have been triggered and the Chubb policy would have provided some coverage that the Progressive policy excluded. But this argument is immaterial here because coverage is lacking based on the insuring clause's "legally entitled to recover" language. Thus, the policies' differing exclusions make no difference in this case.
We overrule the Loncars' sixth issue.
C. Issue Five: Did the trial court err by granting summary judgment on the Loncars' claims under Insurance Code Chapter 541 and Chapter 542?
The Loncars asserted claims that appellees violated Insurance Code §§ 541.060 and 542.060 in handling the Loncars' insurance claims. Appellees sought summary judgment on the Loncars' statutory claims because the policies do not cover the Loncars' claims. The Loncars argue otherwise.[5]
We have held that the Loncars' claims were not covered under the insurers' policies. These holdings defeat the Loncars' statutory claims. See Triyar Cos., LLC v. Fireman's Fund Ins. Co. , 515 S.W.3d 517, 529 (Tex. App.-Houston [14th Dist.] 2017, pet. pending) (no recovery under § 542.060 where there was no coverage); Tex. Farm Bureau Underwriters v. Rasmussen , 410 S.W.3d 335, 340 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ("[S]ection 541.060 liability for unfair claim settlement practices applies only to covered claims.").
The trial court did not err by granting summary judgment on the Loncars' statutory claims. We overrule the Loncars' fifth issue.
*596 IV. CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment.

Appellants filed a suggestion of death advising us that Brian Loncar and his minor child G.L. have died and that Sue Loncar is their estates' representative. We will proceed to adjudicate the appeal as if all parties were alive. See Tex. R. App. P. 7.1(a)(1).

The insurers note that when an insurance policy is a Texas Department of Insurance prescribed form we do not try to ascertain the parties' intent because they did not write the contract. See Greene v. Farmers Ins. Exch. , 446 S.W.3d 761, 766 (Tex. 2014). Instead, we interpret the policy according to its words' ordinary, everyday meaning to the general public. Id. But the insurers do not explain how the Greene rule affects the result in this case. Accordingly, we apply ordinary contract interpretation rules.

The Franco dicta can be harmonized with our holding by construing the policy to mean that coverage applies if "the insured would be entitled at the time of the injury to recover [from the uninsured motorist] through legal action." Wachtler v. State Farm Mut. Auto. Ins. Co. , 835 So.2d 23, 26 (Miss. 2003) (emphasis added). But given this case's facts, we express no opinion regarding situations involving a limitations defense.

The City of Dallas enjoys "governmental immunity." "Sovereign immunity" applies to the State and the divisions of state government; governmental immunity protects political subdivisions such as counties, cities, and school districts. See Gipson v. City of Dallas , 247 S.W.3d 465, 469 (Tex. App.-Dallas 2008, pet. denied).

The Loncars do not argue that they suffered an injury independent of policy benefits. See USAA Tex. Lloyds Co. v. Menchaca , No. 14-0721, 545 S.W.3d 479, 500, 2018 WL 1866041, at *15 (Tex. Apr. 13, 2018) ("An insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits.").