

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00325-CV

———————————————————

CITY OF ARLINGTON, Appellant

V.

CRAIG TAYLOR, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-329704-21

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion on Rehearing by Justice Walker

## MEMORANDUM OPINION ON REHEARING

After considering Appellant City of Arlington's motion for rehearing en banc and supplemental brief (for which we granted the City leave to file) and Appellee Craig Taylor's responses to both, we withdraw our May 18, 2023 memorandum opinion and judgment on our own motion and substitute the following memorandum opinion.[1]

Taylor sued the City after he was in a car collision with a City police officer who was responding to an emergency. The City appeals the trial court's denial of its plea to the jurisdiction, contending that it was entitled to immunity under the emergency exception to the Texas Tort Claims Act's (TTCA) waiver of municipal immunity. We will reverse and render judgment dismissing Taylor's claims against the City. *See* Tex. R. App. P. 43.2(c).

## I. BACKGROUND

### A. FACTUAL BACKGROUND[2]

Benajah Baskin, a City police officer, responded to an emergency call to assist another officer with an occupied stolen vehicle. Baskin testified that "[b]ased on [his] training and experience, a police officer alone with an occupied stolen vehicle is a

---

[1]Our withdrawal of the May 18, 2023 memorandum opinion renders the City's motion for rehearing en banc moot and we deny it as such. *See City of Grapevine v. Muns*, 651 S.W.3d 317, 325 n.2 (Tex. App—Fort Worth 2021, pet. denied) (op. on reh'g).

[2]All facts are derived from the parties' plea-to-the-jurisdiction evidence.

dangerous situation" and "[t]he police officer could be in danger if he or she initiates an arrest and the person in the vehicle resists arrest." Baskin testified that he turned on his emergency lights and sirens and began driving to the location of the stolen vehicle. His lights and sirens remained on throughout the incident.

Traveling north on Lincoln Drive, Baskin approached the intersection with Green Oaks Boulevard. Taylor was traveling east on Green Oaks Boulevard in his vehicle. Taylor testified that he was traveling at or just below the speed limit and did not see Baskin's vehicle. At the intersection, Baskin had a red light and Taylor had a green light.

Baskin testified that he slowed down and scanned the intersection to confirm that it was clear before proceeding. According to Baskin, other vehicles at the intersection were stopping or had already stopped, and he also came to a "momentary stop" before proceeding into the intersection. Almost immediately after entering the intersection, Baskin's vehicle was struck by Taylor's. Baskin testified that he did not see Taylor's vehicle until it was too late.

Taylor testified that, as he approached the intersection, he did not see Baskin's vehicle or emergency lights and did not hear any sirens. There are three traffic lanes on that stretch of Green Oaks Boulevard, and Taylor said that he was traveling in the lane farthest from Baskin and that a truck was driving next to him in the middle lane. He surmised that this truck—which had stopped before the intersection—may have

obstructed him from seeing Baskin's vehicle. Taylor said that he applied his brakes immediately before the collision.

Gregg Dragun, who witnessed the accident, testified that he was stopped at the red light at the intersection heading in the same direction as Baskin on Lincoln Drive. Dragun recalled that conditions were clear and that, although he could see the entire intersection without obstruction, he never saw Taylor's vehicle until the collision occurred. As Dragun waited at the red light, Baskin came up from behind him, "came to a complete stop, and then . . . ventured forward" into the intersection. He confirmed that other vehicles heading in the same direction as Taylor on Green Oaks Boulevard had stopped even though they had a green light. In Dragun's estimation, Taylor failed to appropriately yield to Baskin because (1) other vehicles traveling eastbound on Green Oaks had stopped and (2) Taylor should have seen Baskin's lights or heard his sirens.

Officer Jessica Ramirez, who investigated the accident, testified that Baskin had not come to a complete stop before entering the intersection. She also noted in her crash report that "[Baskin] may have operated the vehicle without due care." When deposed about what she meant by this, Ramirez agreed that she had concluded that Baskin may have acted without due care because "he [ha]dn't check[ed] to make sure all three lanes were clear before he entered" the intersection. This issue was expounded upon further in her deposition:

4

Q. Okay. And if you don't see any traffic in Lane No. 3, the inside lane that Mr. Taylor was in because there's vehicles in Lane 2 that could be blocking your view, that creates a blind spot. [I]n that situation should [Baskin] have waited another second or two to make sure that traffic was clear before he just entered into it blindly?

A. He could have.

Q. And if he would have, he would have noticed another vehicle coming across and he would have waited for it to pass, right?

. . . .

A. Possibly.

Q. . . . Possibly. And then possibly this accident - - this accident could have been avoided had he done so, correct?

. . . .

A. Possibly.

Sergeant John Brown attested that the Arlington Police Department Crash Review Board (Board) investigated the crash and determined that it was a "non-chargeable offense."[3] Brown opined that Baskin had "acted consistently with the rules and regulations applicable to responding to an emergency call." He also testified

---

[3]Brown, who serves as chair of the Board, explained that the Board investigates all crashes involving Arlington police vehicles. According to Brown, when the Board determines that a crash is a non-chargeable offense, the case is referred back to the police officer's "chain-of-command for further review and determination of whether any discipline not directly related to the crash is warranted."

that dashcam video showed that Baskin slowed down but did not completely stop at the intersection.[4]

## B. PROCEDURAL BACKGROUND

Taylor sued the City for negligence. In his third amended petition—the live pleading at the time that the trial court ruled on the City's plea—Taylor alleged "that not seeing all of the vehicles in an intersection that [Baskin] is crossing with a red light in an alleged emergency situation when he had a red light, poses a high risk of serious injury or death." He alleged that Baskin's conduct rose above "a mere momentary lapse in judgment" and, instead, Baskin "acted recklessly when he entered into the intersection at issue without making sure that all three [] lanes of traffic [were] clear instead of just hoping that [they were] clear." Taylor alleged that Baskin's conduct violated Sections 544.004, 544.007, and 545.151 of the Texas Transportation Code.

The City answered and filed a plea to the jurisdiction. In its plea, the City argued that it had immunity under the emergency exception to the TTCA's waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). In response, Taylor argued that Baskin had driven recklessly by failing to ensure that the roadway was clear before proceeding against the red light. He also contended that all of the City's plea witnesses were interested witnesses because they were employed by the City.

---

[4]A dashcam video from Baskin's vehicle shows that he had reduced his speed when he entered the intersection but never came to a complete stop. Ramirez noted in her crash report that the video recorded Baskin's speed at nine miles per hour at the time he slowed down.

Taylor contended that, as interested witnesses, their testimony was incapable of supporting the City's plea because it raised fact issues concerning whether Baskin had (1) come to a complete stop and (2) confirmed that all lanes of traffic were clear before proceeding into the intersection. The trial court denied the plea to the jurisdiction, and the City filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann § 51.014(a)(8) (permitting appeals from interlocutory orders that grant or deny a governmental unit's plea to the jurisdiction).

## II. STANDARD OF REVIEW

A plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). This burden includes establishing a waiver of sovereign immunity in suits against the government. *Id.* In determining whether a claim falls within a statutory waiver of immunity, we begin with the presumption that no waiver exists. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023).

To determine whether a plaintiff has met its jurisdictional burden, we consider the facts alleged by the plaintiff and evidence submitted by the parties. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). When, as here, a plea challenges jurisdictional facts, appellate review mirrors that of a traditional summary judgment. *Id.* Under such review, "we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 529–30. If the pleadings and evidence raise a fact issue as to jurisdiction, the

7

plea should be denied. *Id.* at 530. But if no fact issue remains, the court must dismiss the suit. *Id.*

The jurisdictional calculus is a bit more nuanced in TTCA cases. *See Rattray*, 662 S.W.3d at 866. Governmental immunity generally bars tort claims against municipalities when they arise from the city's governmental functions. *City of Houston v. Green*, 672 S.W.3d 27, 29 (Tex. 2023). Under the TTCA, this immunity is waived for claims arising from a city employee's operation or use of a motor vehicle if the "employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). However, the TTCA includes numerous exceptions withdrawing this waiver, such as the emergency exception raised here by the City in its plea to the jurisdiction. *Id.* § 101.055(2); *Rattray*, at 662 S.W.3d at 866.

Accordingly, to establish the trial court's jurisdiction, a TTCA plaintiff must (1) satisfy the statutory provisions that clearly waive immunity and (2) "expressly negate" any statutory exceptions plausibly implicated by the plaintiff's allegations. *Rattray*, 662 S.W.3d 867; *Maspero*, 640 S.W.3d at 529 ("The plaintiff bears the burden of negating [the emergency exception]'s applicability.") The Texas Supreme Court recently reiterated that this jurisdictional hurdle is the plaintiff's to clear, explaining:

> A governmental defendant, in turn, plays its role by identifying where jurisdiction might be lacking and raising any such deficiencies, most commonly in a plea to the jurisdiction . . . If a plaintiff has *not* shown that a claim affirmatively falls within a statutory waiver, the defendant should say so. Likewise, if the plaintiff omits or otherwise fails to negate a relevant exception to the waiver, the defendant should speak up. Both sides may develop and introduce evidence to support their contentions.

8

This iterative process will ensure that both sides present their jurisdictional arguments to the court, which can play *its* continuing role of assessing its own jurisdiction.

*Rattray*, 662 S.W.3d at 868.

### III. DISCUSSION

In a single issue, the City argues that its plea to the jurisdiction should have been granted because Taylor did not sufficiently negate that the TTCA's emergency exception applied to bar Taylor's claim. Taylor counters that he had no such burden, arguing that the trial court appropriately denied the City's plea because the City bore the burden of conclusively establishing "that there is no dispute as to 'what actually happened'" in the underlying dispute. In Taylor's view, the City's evidence was insufficient because it was "neither free from contradiction nor uncontroverted"— namely because there was disagreement as to whether Baskin stopped or merely slowed at the intersection.

We agree with the City because, as we have already explained, Taylor *did* bear the burden of negating application of the TTCA's emergency exception under the facts of this case, and he failed to do so.

### A. THE EMERGENCY EXCEPTION

The emergency exception provides that the TTCA's waiver provisions do not apply to claims

> arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action,

9

or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). Thus, to negate that the emergency exception applied to his claims, Taylor needed to have raised a fact issue concerning whether (1) Baskin was responding to an emergency call or situation, (2) Baskin's actions complied with the laws and ordinances applicable to emergency action, or (3) Baskin's actions were taken with conscious indifference or reckless disregard. *Id.*; *Maspero*, 640 S.W.3d at 529. Taylor has never disputed the first element of the emergency exception, so our analysis will focus on elements two and three.

## B. COMPLIANCE WITH EMERGENCY LAWS AND ORDINANCES

Taylor pleaded that Baskin's actions did not comply with Sections 544.004, 544.007, and 545.151 of the Transportation Code. *See* Tex. Transp. Code. Ann. §§ 544.004, .007, 545.151. These are generally applicable traffic laws outlining the procedures that vehicle operators must follow when approaching traffic-control devices and intersections. *Id.* §§ 544.004, .007, 545.151. However, the Transportation Code expressly exempts operators of authorized emergency vehicles—like Baskin— from having to follow these procedures. *Id.* §§ 544.004(a)(2), 546.001.

Thus, we hold that Taylor did not bear his burden to raise a fact issue related to Baskin's compliance with any laws or ordinances applicable to emergency action.[5]

---

[5]At oral argument before this court, Taylor's counsel argued—for the first time—that fact issues existed as to whether Baskin complied with Section 546.001(2),

10

## C. Reckless Disregard

In his response to the City's plea, Taylor argued that fact issues existed as to whether Baskin had driven recklessly by failing to fully stop at the obstructed intersection and to ensure that the roadway was clear before proceeding against the red light.

Driving with reckless disregard involves more than a "momentary judgment lapse." *Maspero*, 640 S.W.3d at 531. "It requires a willful or wanton disregard for the safety of persons or property, exhibiting conscious indifference while having subjective awareness of an extreme risk." *Green*, 672 S.W.3d at 30 (internal quotations omitted). Put differently, a driver can be said to drive with reckless disregard only if he commits "an act he knew or should have known posed a high degree of risk of serious injury to others." *Id.* (internal quotations omitted).

---

which permits the operator of an authorized emergency vehicle to proceed through a red light only "after slowing as necessary for safe operation." Tex. Transp. Code Ann. § 546.001(2). We cannot consider this argument because Taylor did not make it in his pleadings, response to the City's plea, or appellee's brief. *See* Tex. R. App. P. 33.1(a), 38.2(a)(1); *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 at n.4 (Tex. 2014) (explaining that appellate courts cannot consider issues that were not raised in the trial court); *see also French v. Gill*, 206 S.W.3d 737, 743 (Tex. App.—Texarkana 2006, no pet.) (explaining that appellate courts cannot consider new summary judgment theories raised by appellees for the first time at oral argument).

In *Green*, a case decided under circumstances strikingly similar to those here,[6] the supreme court held that no fact issue existed as to whether a police officer responding to an emergency call had acted recklessly when he entered an intersection at a red light and then collided with another vehicle. *Id.* at 31. The evidence was disputed as to whether the officer had stopped at the intersection or, instead, had travelled through it at a high rate of speed. *Id.* at 29. And both the officer and an expert witness testified that the officer had failed to exercise due care. *Id.* at 29, 31. The supreme court explained its holding:

> [The plaintiff] provided no evidence to contradict that [the officer] . . . activated his overhead emergency lights, that he averaged 35 to 40 miles per hour, that he at least slowed his speed (if not stopped) before proceeding through each intersection, that he intermittently activated his audible siren, that other vehicles noticed him and stopped as he proceeded [into the intersection], that those vehicles blocked his view of the lane [the plaintiff] was in, and that [the plaintiff] was traveling in the dark without her headlights on.
>
> . . . .
>
> . . . Nothing in this record could support a finding that [the officer] knew he was creating a risk of serious injury and did not care what might happen to other motorists.

*Id.* at 31. The supreme court also noted that, although evidence of an officer's failure to use due care might support a finding that he suffered a momentary lapse of judgment, it "does not establish a reckless disregard for the safety of others." *Id.*

---

[6]The *Green* opinion was issued after we handed down our May 18, 2023 memorandum opinion in this case but while the City's motion for en banc rehearing was pending for our consideration.

Following *Green*, we hold that the record here—even when viewed properly in Taylor's favor—does not support the contention that Baskin knew he was creating a risk of serious injury and did not care what might happen to other motorists. *See id.* Baskin's lights and sirens were activated at all times, he slowed his speed and scanned the intersection, other vehicles had noticed Baskin and had already stopped as he proceeded, those vehicles blocked his view of the lane that Taylor was driving in, and Baskin did not see Taylor's vehicle travelling in the far lane before the collision occurred. Testimony from other police officers about how they would have proceeded under the circumstances or opining that Baskin had failed to use due care is not sufficient to establish that he acted with reckless disregard. *See id.*

Thus, we hold that Taylor did not bear his burden to raise a fact issue related to whether Baskin acted with reckless disregard.

## IV. CONCLUSION

Because Taylor failed to negate the applicability of the TTCA's emergency exception to bar his claims against the City, we sustain the City's sole issue on appeal. We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Taylor's claims against the City. *See* Tex. R. App. P. 43.2(c); *Green*, 672 S.W.3d at 31.

/s/ Brian Walker

Brian Walker
Justice

13

Delivered:  October 12, 2023