

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00216-CV

_____

WEST HARWOOD 334B LAND TRUST, KINGMAN HOLDINGS, LLC,
TRUSTEE, Appellant

V.

EUGENIE CLEMENT AND ROSEMARY CLEMENT, Appellees

_____

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-317550-20

_____

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This interlocutory accelerated appeal concerns the reach of a supreme court emergency order issued in response to the COVID-19 pandemic. The primary question presented is whether the "Seventeenth Emergency Order Regarding the COVID-19 State of Disaster"[1] ("Seventeenth Order") gives trial courts the authority to extend the statutory redemption period following a foreclosure sale. The trial court in this case implicitly held that it does and granted appellees Eugenie and Rosemary Clement's ("Clement")[2] application for a temporary injunction enjoining appellant West Harwood 334B Land Trust, Kingman Holdings, LLC, Trustee ("Kingman") from prosecuting a forcible detainer action against them.

In a single issue, Kingman argues that the trial court erred by granting Clement's temporary injunction application because the Seventeenth Order did not extend the statutory redemption period. In addition to arguing that the trial court properly applied the Seventeenth Order to extend her redemption deadline, Clement also argues, for the first time on appeal, that the temporary injunction may be upheld on the ground that she substantially complied with the redemption statute. We reverse and remand.

---

[1] Supreme Court of Tex., Seventeenth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Dkt. No. 20-9071 (May 26, 2020).

[2] We refer to appellees as "Clement" in the singular not only for ease of reference but also because only Rosemary Clement actively participated in the underlying events.

## Background

Clement owned property at 334 West Harwood Road #B, Hurst, Texas. The property is a unit in the Country Greene Townhomes, a condominium project in Tarrant County. Clement fell behind in paying assessments imposed by the Country Greene Homeowners Association ("HOA"), and the HOA foreclosed on its lien. Kingman purchased the property at the February 4, 2020, foreclosure sale for $5,100.

On February 5, 2020, the HOA's attorneys, Riddle & Williams, P.C. ("Riddle & Williams"), wrote Clement and informed her that the HOA had foreclosed on its lien on her property and that the property had been sold at an assessment lien sale on February 4, 2020. The letter identified Kingman as the purchaser and included its address. The letter also advised Clement that she had the right to redeem the property from the purchaser not later than the ninetieth day after the foreclosure sale. It specifically explained as follows:

> **If a party other than the Association is the Purchaser.** A former owner may redeem the Property from a third-party purchaser by paying to the purchaser an amount equal to the amount bid at the sale, interest on the bid amount from the date of foreclosure sale to the date of redemption, any assessment paid by the purchaser after the date of foreclosure, and any reasonable cost incurred by the Association as owner of the Property, including costs of maintenance and leasing. In addition, the former owner must also pay to the Association all assessments that are due as of the date of the redemption and reasonable attorney's fees and costs incurred by the Association in foreclosing the lien.

The February 5 letter was accompanied by a copy of the Assessment Lien Deed, which also identified Kingman as the purchaser, provided its address, and stated the purchase price was $5,100.

On February 21, 2020, Riddle & Williams sent Clement a letter enclosing a check for the excess sale proceeds. This second letter again identified Kingman as the purchaser and stated its full name and address.

Clement did not exercise her right to redeem the property within ninety days of the foreclosure sale. In a notice to quit letter dated May 14, 2020, Kingman advised Clement that she was required to vacate the property within three days or Kingman would file suit to evict her. Clement did not vacate the property, and on May 19, 2020, Kingman filed a forcible detainer action against her in justice court.

The justice court set the forcible detainer action for hearing on June 25, 2020. Before that hearing could occur, Clement filed the present action in district court seeking an order extending the redemption period and injunctive relief enjoining Kingman from preventing her from exercising the right to redemption. Clement alleged in her petition that the Seventeenth Order gave the trial court authority to extend the statutory redemption deadline. On June 24, 2020, the trial court signed a temporary restraining order restraining Kingman from prosecuting its forcible detainer action.

The trial court heard Clement's application for a temporary injunction on July 8, 2020.[3] Clement, the only witness to testify, admitted that she had been delinquent in paying the HOA assessments. She also admitted that she received Riddle & Williams's February 5, 2020 letter; she understood both what had happened and that she had a right to redeem the property; and she knew that she had to pay at least $5,100 to redeem the property. She did not, however, know the full amount that was required to redeem the property or in what form payment should be made. In any event, Clement admitted that she did not take any immediate action in response to the letter because she did not have even the $5,100 minimum required payment.

Clement testified that she did not contact Kingman because she did not have its telephone number or email address. Although she had Kingman's address, she did not make any written request for the redemption amount or otherwise attempt to contact Kingman by mail. Instead, Clement called Riddle & Williams three times, beginning on March 13. She left a message each time but did not receive a return call. On her fourth attempt to call, a voice recording informed her that the office was closed. Clement testified that she also sought help from various legal aid services but to no avail because those services were either overwhelmed or closed because of the pandemic.

---

[3]The court conducted the hearing via Zoom.

Clement conceded that neither Riddle & Williams nor the HOA did anything wrong. She also acknowledged that "[i]t wasn't that I didn't know – know that there was this foreclosure thing threatening" and "[t]hat [it] was my mistake for missing the deadline."

After the close of evidence, Clement's attorney argued that the trial court could extend the redemption deadline under the supreme court emergency order[4] because that deadline was, in effect, a statute of limitations on Clement's ability to redeem. He also likened Clement's position to a "force majeure situation." Counsel conceded that extending the redemption deadline was not directly addressed in the emergency order but urged that "[t]he supreme court couldn't deal with every possible situation in its orders, and so that's why we're asking the Court to apply it broadly." Counsel then concluded, "That's really the only response I have."

Clement's attorney did not argue that Clement had substantially complied with the redemption requirement, only that she should be given an extended opportunity to comply. In response to the court's inquiry about the redemption amount, counsel noted that Clement had made certain payments to the HOA after the foreclosure sale. He did not, however, urge that those payments constituted substantial compliance, only that they should be accounted for in the redemption price.

---

[4]Clement did not specify at the hearing which emergency order she relied on, but she identified the Seventeenth Order in her petition as being the order at issue.

6

After hearing argument from both sides, the trial court prefaced its ruling by stating, "it's an equitable thing to do here." The court granted a temporary injunction requiring Kingman to provide Clement with the redemption amount by July 21, 2020, and giving Clement until July 28, 2020, to pay that amount or the court would entertain a motion to dissolve the injunction. The court's written amended order incorporates this ruling and further enjoins Kingman from prosecuting its forcible detainer action until judgment is rendered in this suit.

Kingman filed this appeal on July 13, 2020. The trial court has stayed its proceedings pending resolution of the appeal.

## Discussion

### A. Temporary injunction standard

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An applicant for a temporary injunction must plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*; *see Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020).

We review an order granting or denying a temporary injunction for an abuse of discretion. *See Butnaru*, 84 S.W.3d at 204. As we recently explained:

> A trial court abuses its discretion if it rules in an arbitrary manner or without reference to guiding rules and principles. Although a trial court does not abuse its discretion by basing its temporary injunction ruling on conflicting evidence or when some evidence of substantive and probative character exists to support its decision, a trial court does abuse its discretion by misapplying the law to established facts. We review de novo any question-of-law rulings necessary to resolve whether a temporary injunction should issue.

*T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9, 34 (Tex. App.—Fort Worth 2020, pet. denied) (citations omitted), *cert. denied*, No. 20-651, 2021 WL 78187 (U.S. Jan. 11, 2021); *see Abbott*, 610 S.W.3d at 916 (noting "the court has no 'discretion' to incorrectly analyze or apply the law"); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (noting "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion").

Because it is dispositive of this appeal, we consider first whether Clement established a probable right to relief.

## B. Probable right to relief

### 1. Clement's cause of action

Clement's original petition does not expressly identify the cause of action she is pursuing. In a section entitled "Cause of Action," she alleges that (1) her failure to timely exercise her right to redeem was beyond her control because of the COVID-19 emergency, (2) she is ready and able to pay the statutory redemption amount if the court applies the Seventeenth Order to extend her redemption deadline, and (3) she will be denied her opportunity to redeem the property and will lose her equity in the

property if the deadline is not extended. The ultimate relief she requests is an order extending her redemption deadline and requiring Kingman to transfer the property back to her upon her payment of the redemption amount.

We construe Clement's petition as seeking a declaration of her right to redeem the property within a period extended by the Seventeenth Order.

## 2. The Seventeenth Order

The legislature has conferred on the supreme court the authority to "modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor." Tex. Gov't Code Ann. § 22.0035(b). An order issued under this provision "may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court." *Id.*

The supreme court expressly recites in the Seventeenth Order that it is issued pursuant to Government Code Section 22.0035(b). *See* Seventeenth Order, Misc. Dkt. No. 20-9071, ¶ 1. The order further provides, in pertinent part:

3. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

a. except as provided in paragraph (b) [which applies only to certain Family Code proceedings], modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020;

9

. . . .

11. Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and July 1, 2020, is extended until August 15, 2020. This does not include deadlines for perfecting appeal or for other appellate proceedings, requests for relief from which should be directed to the court involved and should be generously granted.

Seventeenth Order, Misc. Dkt. No. 20-9071, ¶¶ 3, 11.

### 3. Extension of Clement's redemption deadline

#### a. The Property Code deadline

Clement's redemption right is governed by Property Code Section 82.113, which states: "The owner of a unit purchased at a foreclosure sale of the association's lien for assessments may redeem the unit not later than the 90th day after the date of the foreclosure sale." Tex. Prop. Code Ann. § 82.113(g). The ninetieth day following the foreclosure sale of Clement's property was May 4, 2020. If the redemption period is not extended, her right to redeem the property expired on that date. *See id.*

The question here presented is whether Clement's redemption deadline falls within the Seventeenth Order's provisions for extending "deadlines and procedures, whether prescribed by statute, rule, or order," or "[a]ny deadline for the filing or service of any civil case." Seventeenth Order, Misc. Dkt. No. 20-9071, ¶¶ 3, 11. We hold that it does not.

10

### b. Principles of interpretation

It is well settled that courts interpret statutes according to the plain meaning of the enacted text. *See, e.g., KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019). "We must enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose.'" *Id.* (quoting *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014)). If a statute is clear and unambiguous, we do not resort to extrinsic aids such as legislative history. *Id.*; *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). "Rather, we limit our analysis to the words of the statute and apply the plain meaning of those words 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.'" *KMS Retail Rowlett*, 593 S.W.3d at 183 (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)).

These principles clearly apply to our construction of Government Code Section 22.0035(b)—the authority underlying the Seventeenth Order—and we see no reason not to apply them also to our construction of the order itself. *See Estate of Hoskins*, 501 S.W.3d 295, 304–05 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (construing court orders according to their "plain terms"); *Tips v. Green*, 533 S.W.2d 155, 157 (Tex. App.—Houston [14th Dist.] 1976, writ dism'd) (noting "[j]udgments are to be interpreted according to their plain and unambiguous meaning").

### c. Interpreting the Seventeenth Order

Government Code Section 22.0035(b) authorizes the supreme court to "modify or suspend *procedures for the conduct of any court proceeding* affected by a disaster during the

pendency of a disaster declared by the governor." Tex. Gov't Code Ann. § 22.0035(b) (emphasis added). Giving the statutory language its plain meaning, a "court proceeding" is necessarily a proceeding in which a party has invoked, or at least attempted to invoke, the power and authority of a court. Thus, "procedures for the conduct of any court proceeding" means procedures for pursuing some action *in court*. This interpretation of Section 22.0035(b) comports with the supreme court's rule-making authority, which includes "the full rulemaking power in the practice and procedure in civil actions" but expressly excludes the power to "abridge, enlarge, or modify the substantive rights of a litigant." *Id.* § 22.004(a).

As the supreme court issued the Seventeenth Order in accordance with its authority under Section 22.0035(b), the order must be construed in harmony with that statute. Consequently, because the supreme court's authority under Section 22.0035(b) is limited to modification or suspension of procedures *in court proceedings*, that same limitation must apply to the Seventeenth Order. Indeed, this limitation is apparent in the very language of the Seventeenth Order, which authorizes Texas courts to modify deadlines or suspend deadlines or procedures "in any *case*, civil or criminal," and to extend "[a]ny deadline for the filing or service of any civil *case*." Seventeenth Order, Misc. Dkt. No. 20-9071, ¶¶ 3, 11 (emphasis added). "Case," in this context, means "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." *Case*, Black's Law Dictionary (10th ed. 2014).

### d. Applying the Seventeenth Order

According to the deadline prescribed by the Property Code, Clement's right to redeem expired on May 4, 2020. *See* Tex. Prop. Code Ann. § 82.113(g). Exercising her right to redeem required only that she timely pay certain sums to Kingman and to the HOA. *See id.* Neither the computation nor the payment of those sums required any court proceeding, and in fact, no court proceeding had been filed at the time the redemption period expired.

Because the Seventeenth Order applies only to deadlines in court proceedings, and because Clement's redemption deadline is not a deadline in a court proceeding, we conclude that the Seventeenth Order did not confer on the trial court any authority to extend that deadline. As that deadline has passed, Clement no longer has any right to redeem the property, and consequently, she has not demonstrated a probable right to relief on her claim for a declaration extending the redemption period. *See Butnaru*, 84 S.W.3d at 204 (explaining applicant for temporary injunction must show probable right to relief sought); *see also Abbott*, 610 S.W.3d at 916 (same).

The trial court thus erred as a matter of law by misinterpreting and misapplying the Seventeenth Order. The temporary injunction order therefore cannot be upheld on the theory that the court could extend Clement's redemption deadline.

## C. Substantial compliance with the redemption statute

### 1. New issue on appeal

"[S]ubstantial compliance with a statute means compliance with its essential requirements." *Sorrell v. Estate of Carlton*, 593 S.W.3d 167, 174 (Tex. 2019) (citation and quotation marks omitted). Clement contends that the temporary injunction may be upheld on the ground that she showed substantial compliance with Property Code Section 82.113(g) by making payments to the HOA after the foreclosure sale. She specifically asserts, without citation to the record, that she prayed for a judgment declaring either that the Seventeenth Order permits extension of the redemption period or that she had demonstrated substantial compliance with the redemption statute. The record does not support this assertion.

Clement's pleadings make no mention of substantial compliance. On the contrary, the petition recites that Clement has *not* redeemed the property, asserts that the trial court has authority to extend the redemption deadline, and alleges that, "[i]f the Statutory Redemption Period is not extended by the Court, [Clement] will be denied the opportunity to redeem." The relief she seeks is "an order of the court extending the Statutory Redemption Period pursuant to the 17th COVID 19 Order to enable [her] to redeem the Property" and requiring Kingman to transfer the property to her "upon [her] satisfaction of the applicable requirements of [the redemption statute]." That same relief is reiterated in her prayer for relief:

14

Plaintiffs respectfully request that the Court extend the Statutory Redemption Period *to enable Plaintiffs to redeem the Property*, and order, that *upon Plaintiffs' compliance* with the other redemption requirements of Tex. Property Code § 82.113(g), ownership of the Property be transferred to Plaintiffs in accordance with Tex. Property Code § 82.113(g).

[Emphasis added.]

Nothing in Clement's pleadings raises the issue of substantial compliance. Similarly, Clement did not assert substantial compliance at the temporary injunction hearing. Rather, she argued only that the trial court should extend the redemption deadline pursuant to authority allegedly conferred on it by the Seventeenth Order. She did note that she had made some postforeclosure payments to the HOA, but she argued only that those payments should be accounted for in determining the redemption price she should pay, not that those payments constituted substantial compliance with her obligation to pay.

An appellate court generally may not consider issues that were not raised in the trial court below, although parties may construct new arguments in support of issues that are properly preserved. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014); *see Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 890 (Tex. App.—Austin 2018, pet. denied). This principle is not confined to grounds asserted by an appellant to challenge a judgment but applies equally to grounds asserted by an appellee in defense of a judgment. *See Tac Med Holdings, Inc. v. REV Recreation Grp., Inc.*, No. 05-18-00915-CV, 2019 WL 3928773, at *5 (Tex. App.—Dallas Aug. 20, 2019, no pet.) (mem. op.) (declining to address new argument raised by appellee); *see also Lara v. Streamline Ins.*

15

*Servs., LLC*, No. 03-19-00474-CV, 2020 WL 7776080, at *6 (Tex. App.—Austin Dec. 31, 2020, no pet.) (mem. op.) (op. on reh'g) (same); *Grant*, 556 S.W.3d at 890–91 (same).

"In general, an 'issue' is a 'point in dispute between two or more parties.'" *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 273 (Tex. 2017) (quoting *Issue*, Black's Law Dictionary (10th ed. 2014)). The point in dispute in this case, as defined by Clement in her pleadings and at the temporary injunction hearing, is whether the trial court had the authority to extend the redemption deadline. The trial court also expressly recognized that as being the legal issue presented for decision.[5] Clement's current theory—that she substantially complied with the redemption statute—is not an argument in support of that issue. It is an entirely separate issue, and one that is at odds with the ultimate relief that she seeks—an extension of time to comply with the redemption statute.

It is important to keep in mind the posture in which this case is before us. Kingman challenges the trial court's granting of a temporary injunction in Clement's favor. One of the elements Clement was required to establish to be entitled to that temporary injunction was a probable right to relief on her cause of action against Kingman. *See Abbott*, 610 S.W.3d at 916; *Butnaru*, 84 S.W.3d at 204. Clement's cause of action is one for declaratory judgment, and the relief she seeks is a declaration

---

[5]The court also identified as an issue whether Clement had been provided a redemption amount. That, however, is a purely factual issue.

16

extending the redemption deadline so that she may satisfy the statutory redemption requirements. Finally, the amended temporary injunction order itself is founded on the premise that Clement has not complied with those requirements but should be afforded additional time to do so. Specifically, the order gives Clement a new deadline by which to pay the redemption price to Kingman and orders that, if she does not pay on or before that date, the temporary injunction will be dissolved without further court order.

Nothing in the record supports Clement's contention that she asserted a right to relief based on the legal theory of substantial compliance. That theory raises a separate issue than does the theory she pursued in the court below. The issue presented by the substantial compliance theory is whether Clement timely complied with the essential requirements of the redemption statute. *See Sorrell*, 593 S.W.3d at 174. The issue presented by the emergency order theory is whether the court could extend the redemption deadline to give Clement an opportunity to comply with those requirements. Such an extension would not be needed if Clement had already substantially complied.

To preserve her contention that substantial compliance is an alternative basis for granting temporary injunctive relief, Clement was required to present that issue to the trial court. *See Grant*, 556 S.W.3d at 890. Because she did not, we will not consider this issue on appeal. *See id.*; *see also Greene*, 446 S.W.3d at 764 n.4.

**2. Evidence of substantial compliance**

Alternatively, we conclude that Clement did not demonstrate a probable right to relief on a claim of substantial compliance.

Substantial compliance presents a mixed question of law and fact. *Sorrell*, 593 S.W.3d at 174. A reviewing court defers to the trial court's factual determinations. *Id.* When the facts are undisputed, as in this case, the reviewing court determines whether the trial court properly applied the law to the facts in reaching its legal conclusion. *See id.*

Whether a party has substantially complied with a redemption statute requires considering "the totality of the circumstances, including the amount left unpaid, the owner's good faith and diligence in attempting to comply with the statute, and any factors that hindered the owner's full compliance." *Id.* (footnotes and quotation marks omitted).

The facts of *Sorrell* illustrate circumstances that support a finding of substantial compliance. That case concerned estate property that was sold at a tax sale. *Id.* at 168. Before the redemption deadline, the executor of the estate gave the purchaser formal written notice of her intent to redeem the property. *Id.* at 169. The executor died suddenly, and a successor was appointed six days before the redemption period expired. *Id.* That same day, the estate sent the purchaser a proposed redemption deed; two checks, one for the amount paid at the tax sale, plus an additional 25%, and the other for deed-recording fees; and a letter offering to pay other claimed expenses. *Id.*

18

at 169–70. The amount tendered was later determined to be 88% of the actual redemption amount. *Id.* at 170.

In discussing whether the estate substantially complied with the redemption statute, the supreme court noted the following circumstances:

> In this case, the evidence establishes that the Estate timely tendered a redemption payment, but its checks were short by more than $11,000, or about 12% of the total due under Section 34.21(e). The unpaid funds included "the amount paid by the purchaser as taxes, penalties, interest, and costs"—sums the Estate did not know. Although the Estate could have obtained the figures from the tax assessor–collector, it attempted to obtain them from Sorrell before the deadline by asking in its August 21 letter to be notified "immediately" "[i]f there are any more claimed expenses," and it promised to pay them. . . . While dealing with the circumstances immediately following Karen's unexpected death, the Estate timely paid all it knew then to pay and promised to promptly pay any additional amounts required.

*Id.* at 174–75 (footnotes omitted).

The efforts made by the estate in *Sorrell* are in stark contrast to those made by Clement in the present case. Clement was required to pay Kingman an amount equal to: (1) the amount bid at the sale, (2) 6% interest on that amount, (3) any assessment paid by Kingman after the date of foreclosure, and (4) any reasonable costs incurred by Kingman as the owner of the unit, including costs of maintenance and leasing. *See* Tex. Prop. Code Ann. § 82.113(g). She did not, however, pay Kingman anything at all. Thus, "the amount left unpaid"— the entire redemption amount due to Kingman— does not support a finding of substantial compliance. *See Sorrell*, 593 S.W.3d at 174.

19

Clement's "good faith and diligence in attempting to comply with the statute" also falls far short. Unlike the estate in *Sorrell*, Clement made no attempt to determine and pay the redemption amount due to Kingman. The undisputed evidence establishes that, although Clement admittedly had Kingman's address, she never attempted to contact Kingman in writing, either to inform it of her intent to redeem or to ascertain the redemption amount. Clement also admittedly knew that Kingman paid $5,100 at the foreclosure sale and that she needed to pay at least that much to redeem the property. Even so, she did not tender any payment to Kingman. *See id.*

Clement contends that the COVID-19 pandemic hindered her full compliance with the redemption statute. The record shows that the pandemic hindered Clement's efforts to contact the attorney for the HOA and to obtain assistance from legal aid organizations. The record does not, however, show that the pandemic in any way hindered Clement's ability to contact Kingman in writing to obtain the redemption amount, to pay at least the minimum amount that she knew was required, or to alert Kingman that she intended to redeem the property.

Clement does not argue that she complied with any portion of her obligation to Kingman, the purchaser from whom she now seeks to redeem the property. Instead, she relies on that portion of the redemption statute requiring a redeeming party to also pay to the homeowners association any assessments that are outstanding as of the redemption date, as well as reasonable attorney's fees and costs incurred by the association in foreclosing on the property. *See* Tex. Prop. Code Ann. § 82.113(g). She

argues that her substantial compliance with this portion of the statute is demonstrated by evidence that she paid HOA assessments on the property, as well as an additional $1,000 payment, after the foreclosure sale.

The record reveals that Clement's postforeclosure payments were not made in any attempt to redeem the property. She testified that her monthly assessments were automatically deducted from her bank account and that the HOA simply continued to deduct those payments after the foreclosure sale.

Concerning the additional payment, Clement states in her brief that she paid $1,000 to the HOA in February 2020, "to cover the expenses relating to the foreclosure." The record does not support this statement. Clement testified that she had already been making automatic $1,000 payments to the HOA before the February foreclosure sale. Those payments could not have been to reimburse the HOA for a foreclosure that had not yet occurred, and Clement never testified that that was their purpose. It appears instead that Clement was attempting to pay off the arrearage owed to the HOA to prevent foreclosure.

The uncontested evidence does not support Clement's substantial compliance argument. In addition, her argument is legally deficient because it focuses solely on Clement's statutory obligation to the HOA and does not address her obligation to Kingman. *See id.* Clement's narrow focus ignores an essential requirement of the redemption statute—that the redeeming party make the purchaser whole. *See id.* No reasonable interpretation or application of the statute permits omitting that

requirement from a substantial compliance analysis. As discussed above, the record is devoid of any evidence that Clement complied with any of her statutory obligations to Kingman, the purchaser.

We are well aware that Texas courts favor redemption over forfeiture. *See Sorrell*, 593 S.W.3d at 173. This principle allows for substantial compliance with a redemption statute; it does not allow for less. We cannot conclude on this record that Clement established a likelihood of succeeding on her newly asserted substantial compliance claim. As a result, we cannot uphold the temporary injunction on this theory, even if it were properly before us.

We thus sustain Kingman's only issue.

## Conclusion

Having sustained Kingman's sole issue, we reverse the amended temporary injunction order and remand this cause to the trial court for further proceedings.

/s/Mike Wallach
Mike Wallach
Justice

Delivered: April 1, 2021